In the Matter of HARRY LIPMAN, Doing Business as ACME SHELLAC PRODUCTS COMPANY, Respondent.

HAEUSER SHELLAC COMPANY, INC., Appellant.

Argued February 26, 1942; decided July 29, 1942.

*Edward A. Alexander* for appellant. There was no agreement in writing between the appellant and Lipman and hence compulsory arbitration could not be had (Civ. Pr. Act, §§ 1449, 1450). (*Paige* v. *Faure*, 229 N. Y. 114.) The making of the contract was not only denied but evidentiary facts submitted showing that it did not exist, and the Special Term properly left that issue to the jury, as well as the issue of cancellation. (*Matter of Japan Cotton Trading Co.* v. *Farber*, 233 App. Div. 354; *Finsilver, Still & Moss* v. *Goldberg M. & Co.*, 253 N. Y. 382; *Matter of Engel* v. *Weintraub*, 242 App. Div. 505; *Lewis* v. *Houlberg*, 220 App. Div. 762; *Matter of Marchant* v. *Mead-Morrison M. Co.*, 252 N. Y. 284; *Samuels* v. *Samis*, 124 Misc. Rep. 35; *Matter of Ermolieff* v. *Liss*, 140 Misc. Rep. 214; *Matter of Young* v. *Crescent Development Co.*, 240 N. Y. 244.) The refusal of the appellant to arbitrate an alleged controversy arising between Lipman and the appellant, was fully justified, as not being a controversy within the scope or contemplation of the arbitration agreement. (*Matter of Buxton* v. *Mallery*, 245 N. Y. 337; *Matter of Young* v. *Cresent Development Co.*, 240 N. Y. 244.) The petition does not allege facts to show the existence of any controversy between the parties. (*Matter of Bernstein* [*Abrams*], 176 Misc. Rep. 563; *Matter of Webster* v. *Van Allen*, 217 App. Div. 219.)

*Julius Zizmor* and *Frank Zizmor* for respondent. Petitioner, as assignee may compel the appellant to submit to arbitration in accordance with the terms of the contract of September 18, 1940. (*Matter of Lowenthal*, 199 App. Div. 39; 233 N. Y. 621; *Matter of Hosiery Mfrs. Corp.* v. *Goldston*, 238 N. Y. 22; *Gargiulo* v. *California Wineries & Distilleries*, 103 Misc. Rep. 691.) Inasmuch as appellant concedes the making of the contract of September 18, 1940,

and its failure to proceed to arbitration in accordance with the provisions thereof, the order appealed from properly directed that the appellant proceed to arbitration without the necessity of a trial of alleged preliminary issues. (*Matter of King-Varick Corp.*, 129 Misc. Rep. 645; *Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388; *Matter of Wilkins*, 169 N. Y. 494; *Matter of Pierce* v. *Brown Buick Co.*, 258 App. Div. 679.) A controversy exists which should be submitted to arbitration. (*Hipple* v. *Melachrino*, 159 App. Div. 741; *Matter of Wenger & Co.* v. *Propper I. H. Mills*, 239 N.Y. 199.)

FINCH, J. The petition alleges that on September 18, 1940, Acme Shellac Products Corp., hereinafter referred to as Acme, entered into a written contract with the Haeuser Shellac Company, Inc., hereinafter referred to as Haeuser, by which Haeuser agreed to sell and deliver to Acme 150 barrels of bone dry white shellac at twenty-three cents per pound, delivery by December 31, 1940. The contract contained the following clause: "Any and all controversies in connection with, and/or arising out of, this contract shall be exclusively settled by arbitration by the Arbitration Committee of the American Bleached Shellac Manufacturers Association, Inc., in accordance with the rules of said Association." Petition also alleges that Haeuser failed and refused to deliver, although demand was duly made.

On October 1, 1940, Acme entered into a new contract with Haeuser for the sale of 150 barrels of shellac to Acme at twenty-two cents a pound. This contract was sent to Acme by Haeuser enclosed in a letter which read:

"We are enclosing herewith our contract in duplicate covering your purchase of 150 barrels of bone dry white shellac.

"Will you please sign both copies and return for our signature. We will then send you one copy for your files. * * *

Yours very truly,

HAEUSER SHELLAC COMPANY, INC."

Haeuser claims that this contract of October 1, 1940, by agreement of the parties, was substituted in place of the contract dated September 18, 1940, and that pursuant to this agreement the contract dated September 18, 1940 was thereby cancelled. It is to be noted that nothing in the contract of October 1, 1940, or in the accompanying letter indicated an intention to cancel the contract

of September 18, 1940, nor was this contract ever surrendered for cancellation.

On December 31, 1940, petitioner Harry Lipman, who was president of Acme, discontinued business as a corporation and commenced operating the corporate business individually, doing business as Acme Shellac Products Co. In consequence Acme assigned the contract dated September 18, 1940, to Lipman indivi ually, who in turn assumed the performance of all the terms of said contract. Petition further alleges that Haeuser, however, although promising to deliver, never in fact delivered any of the goods under this contract of September 18, 1940, although constant demand was made for such delivery between September and December, 1940, as well as between January and July, 1941. Lipman thereupon demanded that Haeuser proceed to arbitrate the differences arising out of this contract, but Haeuser refused. In consequence petitioner moved at Special Term pursuant to section 1450 of the Civil Practice Act to compel Haeuser to proceed to arbitration in accordance with the terms of the contract.

At Special Term an order was entered directing that the making of the contract of September 18, 1940, be submitted to a jury and if the jury found that the contract was made, then was it thereafter cancelled and annulled by the parties? If not, Haeuser was directed to submit forthwith to arbitration. Upon appeal to the Appellate Division the order was modified by striking therefrom the submission to the jury so as to compel arbitration forthwith.

As to the making of the contract, there is no issue, since that is, in effect, admitted not only in the answer of defendant but also in its brief in this court.

Upon this appeal appellant stresses that the issue of the cancellation of the contract is one which must be determined by the court before it may compel arbitration. A different question would be here if the issue was whether the contract never came into existence and hence was void, or if, although the contract was made, there arose an issue of fraud, duress or other impediment which rendered the contract voidable, or if there were any conditions precedent. But since appellant in the case at bar admits the making of the contract of September 18, 1940, and its failure to proceed to arbitration in accordance with that portion of the con-

tract which provides therefor, sufficient has been shown to make applicable that part of section 1450 of the Civil Practice Act which reads as follows: " Upon being satisfied that there is no substantial issue as to the making of the contract * * * or the failure to comply therewith, the court * * * hearing such application, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the contract * * *."

While it must ever be borne in mind that a court has no power to grant a motion to compel arbitration unless the subject-matter is comprised within the agreement to arbitrate made by the parties, yet when once an agreement to arbitrate has been made, such an agreement must be considered in the light of the broad language used in the above arbitration statute. (Civ. Prac. Act, § 1450.) This language seems to imply that all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators. It is to be noted that, contrary to the contention of appellant, the statute only requires the contract to have been made and does not require that it shall continue to be in existence. The language of the agreement to arbitrate of course, must be sufficiently broad so as to permit of the application of the general principle that all issues subsequent to the making of the contract are not for the court but for the arbitrators. Where, however, as here, the language of the provision providing for arbitration uses not only the phrase " any and all controversies arising out of the contract " but also " any and all controversies in connection with the contract," this language would appear sufficiently broad to express the intention of the parties to include within the exclusive jurisdiction of the arbitrators as a general rule all acts by the parties giving rise to issues in relation to the contract, except the making thereof.

So in *Matter of Kahn* (284 N. Y. 515, 523), where the agreement for arbitration was much narrower than in the case at bar and the question presented was " whether the court, before it may compel arbitration, must in this case pass upon an issue of whether the depositor has breached the agreement of settlement," we held that before compelling arbitration it was not necessary for the court to determine that the contract was either performed by one party or breached by the other. The question of performance goes to the

merits, and that, the parties have consented to have decided by the arbitral tribunal. (*Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills, Inc.*, 239 N. Y. 199.) The issue arising from the defense of cancellation, therefore, must be submitted for decision to the arbitrators.

Defendant also urges as a defense to the motion to compel arbitration that, since Lipman was not a party to the contract but is an assignee, he may not compel Haeuser to submit to arbitration. The argument of appellant is based on the premise that the arbitration clause may not be taken advantage of by an assignee. We have heretofore held, however, with reference to a contract similar to that in the case at bar, that the arbitration clause is an integral part of the contract and may be availed of, not only by the original parties but also by assignees. (*Matter of Lowenthal*, 199 App. Div. 39; affd., 233 N. Y. 621; *Matter of Hosiery Manufacturers Corp.* v. *Goldston*, 238 N. Y. 22.) These cited cases thus negative the contention that a contract for the sale of merchandise containing an arbitration clause may not be taken advantage of by an assignee.

Haeuser urges secondly that the contract is not assignable because it is a personal contract since Haeuser was obliged to sell the merchandise on credit and hence, while it might be satisfied with the credit standing of Acme, it might be unwilling to extend credit to Lipman. This contention is untenable. Since Haeuser did not refuse to arbitrate or to deliver the goods upon the ground that the credit of Lipman was not satisfactory, it may not now make such claim for the first time. Moreover, this contract provided that, if the credit of the buyer was such that in the judgment of the seller, payment ought to be made in advance, upon notification by the seller to the buyer to this effect, the terms of payment were to be deemed amended so as to provide for payment in advance of delivery.

It follows that the order should be affirmed, with costs.

LEWIS and CONWAY, JJ. concur with FINCH, J.; LEHMAN, Ch. J., and DESMOND, J., concur in the result for the reasons stated in the dissenting opinion in *Matter of Kramer & Uchitelle, Inc.* (288 N. Y. 467), decided herewith; LOUGHRAN and RIPPEY, JJ., dissent.

Order affirmed. (See 289 N. Y. 647.)