In the Matter of the Arbitration between DAVID MINKIN et al., Appellants, and JOHN HALPERIN, Respondent.

Second Department, December 21, 1951.

*John P. McGrath* for appellants.

*Arthur G. Warner* and *James E. Birdsall* for respondent.

JOHNSTON, J. On June 16, 1950, appellants agreed in writing with respondent and others, as sellers, to purchase certain corporate stock, and paid $10,000 on account of the purchase price. The agreement contained a clause that '' Any controversy or claim arising out of, or relating to this agreement or the breach thereof, shall be settled by arbitration     *    *    *.''

On October 24, 1950, the same parties contracted in writing: (1) that the $10,000 paid by appellants on June 16, 1950, be returned to them; (2) that the agreement of June 16, 1950, '' is hereby canceled and declared of no further force or effect, and said agreement shall be interpreted as though it had not been executed ''; (3) that '' Each of the parties does hereby release the other from any and all obligations arising as a result of the execution of the aforesaid agreement ''.

On March 7, 1951, respondent (one of the sellers of the corporate stock) served a demand for arbitration under the above-quoted provision of the June 16, 1950, agreement with respect to damages for the alleged breach by appellants of that agreement.

Appellants moved for a stay of arbitration on the ground that no contract to arbitrate was in existence. Respondent opposed the motion, claiming: (1) that the execution of the October 24, 1950, contract had been induced by coercion and duress and, hence, it was invalid and does not operate as a cancellation or release of the June 16th agreement; (2) that whether the second contract operated to cancel the first agreement was a matter to be submitted to and decided by the arbitrators. Special Term denied the motion and directed that arbitration proceed. The purchasers appeal.

In my opinion the order should be reversed and the motion granted.

'' Arbitration presupposes the existence of a contract to arbitrate '' (*Finsilver, Still & Moss* v. *Goldberg, Maas & Co.,* 253 N. Y. 382, 389); and '' proceedings to enforce arbitration under article 84 of the Civil Practice Act presuppose the existence of a valid and enforceable contract at the time the remedy is sought.'' (*Matter of Kramer & Uchitelle, Inc.,* 288 N. Y.

467, 471.) Here the contract to arbitrate was cancelled by express agreement of the parties, an act which was within their power to do. Even if the Legislature should attempt to prevent parties from modifying or canceling their agreement to arbitrate, "it would be such an abridgement of the right of citizens to contract that the constitutionality of the law might well be doubted." (*Matter of Zimmerman* v. *Cohen,* 236 N. Y. 15, 20.)

Respondent seeks to revive the agreement of June 16th, providing for arbitration, by the mere assertion — unsupported by a single evidentiary fact — that the cancellation contract is invalid because his consent thereto was procured by coercion and duress. But such a result may not be reached until the cancellation contract is set aside by action in equity brought for that purpose. (*Matter of Remeny, Inc.* [*Jolico Textile Co.*], 274 App. Div. 916, motion for leave to appeal to the Court of Appeals denied, 274 App. Div. 985; *Matter of Binger* [*Thatcher*], 279 App. Div. 650; *Matter of Worcester Silk Mills Corp.,* 50 F. 2d 966.) The issue of coercion and duress in inducing the October 24th contract is not an issue which the parties may be said to have intended to arbitrate under the June 16th agreement. That issue is not a controversy or claim arising out of, nor does it have relation to, the agreement of June 16th. It is an issue which relates solely to the validity of the contract of October 24th.

*Matter of Remeny, Inc.* (*Jolico Textile Co.*) (*supra*) is directly in point. There petitioner contracted — the contracts containing arbitration clauses — to purchase certain goods from respondent. After more than half the goods were delivered and $4,000 were paid on account of the purchase price of the goods delivered, petitioner, complaining of the quality of the merchandise that had been delivered, claimed that the contracts were cancelled, and demanded the return of the money it had paid on account. Following extended conferences, the matter was settled, the original purchase and sale contracts were cancelled and general releases were exchanged. Thereafter petitioner, alleging that it had been induced by respondent's fraud to enter into the settlement agreement and to deliver its general release, and relying upon the arbitration clauses contained in the original purchase and sale contracts, instituted a proceeding to compel arbitration of the controversies between the parties. Respondent claimed that there was no existing, valid and enforcible contract or contracts to arbitrate because the original purchase and sale contracts containing the arbitration clauses had been cancelled and terminated and petitioner

had delivered to respondent a general release discharging and terminating all contracts between the parties, including agreements to arbitrate. The application to compel arbitration was denied at Special Term and the order was affirmed by the Appellate Division in the First Department. Exactly the same situation exists in the case at bar, and the same determination should be made. To the same effect is *Matter of Binger (Thatcher) (supra.)*

*Matter of Lipman (Haeuser Shellac Co.)* (289 N. Y. 76), cited by Special Term, and upon which respondent primarily relies, does not require a different holding. Examination of the record in that case shows there were three contracts for the purchase and sale of shellac — one on September 18, 1940, for 150 barrels at twenty-three cents a pound; one on October 1, 1940, for 150 barrels at twenty-two cents a pound, and one on November 8, 1940, for 300 barrels at twenty-two cents a pound. Each contract contained an arbitration clause providing that " ' Any and all controversies in connection with, and/or arising out of, this contract shall be exclusively settled by arbitration * * *.' " (P. 78.) Delivery was made by the seller under the October 1st and November 8th contracts. Almost a year later, when the market price of shellac had risen about 50%, Lipman, the purchaser's assignee, claiming that the seller failed to deliver the merchandise covered by the September 18th contract, demanded arbitration under that contract, but the seller refused. In consequence, Lipman moved to compel the seller to proceed to arbitration. In opposition to the application, the seller contended that the September 18th contract was no longer in existence because, after the purchaser had complained about the price, by oral agreement of the parties the October 1st contract was *substituted* for the September 18th contract. The Court of Appeals held that that was an issue to be determined by the arbitrators because it was a matter which not only arose out of the September 18th contract, but also was a controversy " in connection with " that contract. Obviously that case is readily distinguished from the case at bar. There the issue was whether the September 18th contract had been performed. In other words, whether or not the parties in fact agreed that there should be performance by the substitution of the October 1st contract for the September 18th contract and by delivery pursuant to the October 1st contract was a matter properly to be determined by the arbitrators. (Cf. *Moers* v. *Moers,* 229 N. Y. 294, 300.) As stated in *Matter of Wenger & Co.* v. *Propper Silk Hose Mills* (239 N. Y. 199, 202–203) : " where

a *bona fide* dispute in fact arises over the performance of a contract of purchase and sale it does not devolve upon the court to say that as matter of law there is nothing to arbitrate.'' In the case at bar there is not present either the issue of performance or breach of the original contract of purchase and sale. Here the sole issue is whether or not the cancellation contract was invalid because of alleged coercion and duress in inducing that contract. That is a matter which does not arise out of the original contract, nor does it have any relation or connection therewith. It should be noted that in *Matter of Lipman* (*Haeuser Shellac Co.*) (289 N. Y. 76, 78–79, *supra*) the court emphasized '' that nothing in the contract of October 1, 1940, or in the accompanying letter indicated an intention to cancel the contract of September 18, 1940 '', while in the case at bar the parties, by the written contract of October 24, 1950, expressly provided that the agreement of June 16, 1950, '' is hereby canceled and declared to be of no further force or effect, and said agreement shall be interpreted as though it had not been executed.''

Nor is *Alpert* v. *Admiration Knitwear Co.* (278 App. Div. 841), cited by respondent, helpful. That case concerned a contract for the sale of goods. The contract contained an arbitration clause and also a provision that, '' if at any time, in the sole opinion of the Seller, the financial responsibility of the Purchaser shall become impaired or unsatisfactory to the Seller cash payments in advance of delivery may be required '', and '' Upon failure to pay any amount due to the Seller '', it may at its option terminate the contract. The seller demanded payment in advance of delivery, but the buyer refused to comply with the demand. The seller terminated the contract and refused to deliver the goods. The buyer moved to compel arbitration. The seller opposed the application on the ground that the contract had been terminated (not as in the instant case by mutual agreement of the parties but solely by the seller) and, therefore, there was no longer in existence any binding contract to arbitrate. By a divided court we held that the application for arbitration should be granted because there was an issue as to whether the parties intended that the seller should have the right to cancel the contract even if the demand for the advance cash payment were not made in good faith, and if the parties intended that the demand was required to be made in good faith, whether or not the demand by the seller was so made. In that case there also was an issue as to whether the seller had breached the contract before demanding the cash advance payment, it appearing

that the contract was made on May 12, 1950, and required delivery of the goods " at once ", whereas the demand for the cash advance payment was not made until June 8, 1950, after the buyer had demanded delivery of the goods or that the matter be submitted to arbitration. The majority of the court held that these were controversies arising out of or relating to the contract which were required to be settled by arbitration. In the case at bar there is no ambiguity in the purchase and sale contract, or in the cancellation contract and, hence, the interpretation of either contract is not at issue. The only issue is whether the cancellation contract of October 24th was induced by coercion and duress. In my opinion, that is not a matter for arbitration because the subject matter is not comprised within the arbitration agreement of June 16th.

The foregoing has been written on the assumption that facts are set forth in the affidavit in opposition to the motion for a stay of arbitration sufficient to raise an issue of fact with respect to the coercion and duress claimed to have induced the contract of cancellation. However, the affidavit is clearly insufficient. It is made, not by the respondent, one of the sellers, but by his attorney in fact, who also executed the contract of cancellation on behalf of respondent. None of the other three sellers, who also executed the contract of cancellation, ever demanded arbitration or claimed that the June 16th agreement was breached or that the contract of cancellation is invalid. All that respondent's attorney in fact states in the opposing affidavit is that the execution by him of the cancellation contract was " procured by coercion and duress because of the fear of petitioners ' [appellants'] threats to use illegal and improper means which would result in a considerable loss and damage to the respondent ". These allegations are mere conclusions of law. *(Crossways Apts. v. Amante,* 213 App. Div. 430, 435–436; *Talcott v. City of Buffalo,* 125 N. Y. 280, 284; *Knapp v. City of Brooklyn,* 97 N. Y. 520, 523.) Where an application is made to compel arbitration, the statute requires that evidentiary facts be set forth raising a substantial issue as to the making of the contract or submission or the failure to comply therewith before there may be, a preliminary trial of those issues. (Civ. Prac. Act, § 1450.) Obviously the same rule should be applied where a party desiring arbitration asserts that there is an issue with respect to the making of a contract which expressly cancels the arbitration contract. There being no such factual showing in opposition to the motion for a stay of arbitration, the cancellation contract must be given full force and effect.

The order should be reversed, with $10 costs and disbursements, and the motion to stay arbitration granted, with $10 costs.

· NOLAN, P. J. (concurring). In a proceeding such as this the only issues which may be decided by the court are those which arise as to the making of the contract to arbitrate, and the failure to comply therewith. (Civ. Prac. Act, §§ 1450–1458.) Every other issue, whether of fact or law, if it is comprised within the agreement to arbitrate, is within the exclusive jurisdiction of the arbitrators. (*Matter of Lipman [Haeuser Shellac Co.]*, 263 App. Div. 880, affd. 289 N. Y. 76.) If any other issue exists, which is not comprised within the agreement to arbitrate, it may not be decided over objection, either by arbitrators (*Matter of Lipman [Haeuser Shellac Co.], supra; Matter of Bullard v. Grace Co.*, 240 N. Y. 388) or by the court in an arbitration proceeding. (Cf. *Matter of Worcester Silk Mills Corp.*, 50 F. 2d 966.) If one of the issues to be determined is whether or not an agreement containing an arbitration clause has been cancelled, it must be determined by arbitrators if the language of the arbitration clause is sufficiently broad to express such an intention. (*Matter of Lipman [Haeuser Shellac Co.], supra.*) On the other hand, if, as in the instant case, a claim is made under such an agreement, and there is no dispute as to the fact that it has been cancelled and that all the parties have been released from their obligations thereunder, there are no issues relating to the agreement which remain to be decided, by arbitration or otherwise. (Cf. *Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467.) Arbitration may be resorted to only to settle controversies. If no issue of fact or law exists in relation to a matter sought to be submitted to arbitration, there is, obviously, no controversy to be settled, and the matter is not one which may be comprised within an agreement to arbitrate. (Civ. Prac. Act, § 1448.)

Respondent contends that a controversy has arisen as to whether or not the contract of June 16th was cancelled. This controversy, he asserts, should be settled by arbitration, since it is one which relates to that contract and the parties agreed to arbitrate any controversy or claim arising out of or relating to it. If that were the controversy to be settled, it could be settled only by arbitrators. The issue is not one which may be decided by the court in this proceeding, and it does fall within the broad provisions of the arbitration agreement. (Cf. *Matter of Lipman [Haeuser Shellac Co.], supra.*)

It is apparent, however, that respondent has not correctly stated the issue to be determined. There is no dispute between

the parties as to the effect of the agreement of October 24th, if that is a valid agreement, and there can be no dispute that, unless that agreement is void or may be avoided, the contract of June 16th has ceased to exist and has no force or effect whatever. Respondent asserts that the agreement is void because it was induced by coercion and duress. As Mr. Justice JOHNSTON has pointed out, that assertion creates no controversy which relates to the contract of June 16th. If any controversy exists by reason of that assertion it is one which relates solely to the agreement of October 24th. Moreover, if the agreement of October 24th was induced by duress, it is not necessarily void. A contract obtained by duress is not ordinarily void but is merely voidable, and a party seeking to avoid such a contract must act promptly to repudiate it, and must return, or offer to restore, what he has received under it. (*Oregon Pacific R. R. Co. v. Forrest,* 128 N. Y. 83.) Respondent must establish, therefore, before he may assert any claim under the contract of June 16th, not only that his later agreement was induced by duress, but also that he is entitled, under existing circumstances, to avoid it. Since these issues were not comprised within the agreement to arbitrate, they may not be decided by arbitrators, nor may they be decided by the court, in this proceeding. (Civ. Prac. Act, §§ 1450, 1458; *Matter of Worcester Silk Mills Corp.,* 50 F. 2d 966, *supra.*)

SNEED and MACCRATE, JJ., concur with JOHNSTON, J.; NOLAN, P. J., concurs in separate opinion in which SNEED and MAC-CRATE, JJ., concur; ADEL, J., concurs with the following memorandum: Perforce the terms of the release agreement there is no existing agreement to arbitrate. The affidavit submitted on behalf of respondent is insufficient to tender to the court any issue as to the validity of the release.

Order denying petitioners' motion to stay an arbitration proceeding reversed, with $10 costs and disbursements, and motion granted, with $10 costs.