Vincent A. Lupiano, J.
This is a motion to compel arbitration pursuant to article 84 of the Civil Practice Act. The petitioner (hereinafter referred to as “ Local 1202 ”) is Local Division 1202 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America. It appears that Local 1202’s membership consists of bus operators who, among others, are employed by the Eastern Greyhound Lines, a division of the Greyhound Corporation, the respondent in this proceeding.
On August 20, 1953 the petitioner was a party to a collective bargaining agreement between certain locals of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America and the Central Greyhound Lines, a predecessor division of the respondent. This agreement, effective May 1, 1953, was to run until October 31, 1956 with provision to extend the initial term from year to year thereafter unless changed or terminated as therein provided.
In June, 1956 a dispute arose between the petitioner and respondent with respect to seniority assignments of bus operators in runs between New York and Pennsylvania. It appears that this dispute seriously affects other company bus operators, members of Local Division 1063 and Local Division 1210 of the Amalgamated Association. These locals appear herein and apply for an order allowing them to be joined as additional respondents herein. The application is granted.
The latter-named locals were not parties to the collective bargaining agreement of 1953, in issue in this action, having signed a separate but similar agreement with Pennsylvania Greyhound Lines, another subsidiary of the. respondent. Pursuant to the terms of the contract effective May 1, 1953, to which the petitioner and respondent were both parties, arbitration of the dispute was commenced by the selection of arbitrators. In the interim, Central Greyhound and Pennsylvania Greyhound were consolidated into Eastern Greyhound Lines. A new collective bargaining agreement was effected on November 1, 1956. The parties consisted of the Eastern Greyhound Lines and the various locals who previously had collective bargaining agreements with the now merged predecessors of Eastern.
The respondent contends that the subsequent agreement modified and superseded the previous existing contract under *380 which the locals had formerly been operating; that since the dispute which arose affected other locals, permission must be obtained from the Eastern Executive Council of the Amalgamated Divisions pursuant to subdivision 4 of article I of the 1956 agreement before arbitration may be compelled by a local. This permission has not been granted by the executive council.
On the other hand, the petitioner contends that its right to arbitrate under the agreement of 1953 survives the new agreement as the dispute arose prior to its adoption. And, secondly, Local 1202 cannot be bound by the terms of the new agreement since it was not a party thereto.
There can be no doubt that the collective bargaining agreement of November 1,1956 was intended to supersede and modify the agreement of May 1, 1953. Article XXV of the 1953 agreement specifically provides for change or modification. “ This agreement * * * shall remain in effect from year to year thereafter unless changed or terminated as herein provided. Either party desiring to make any changes or modification in this agreement to become effective at the end of the initial term or any annual extension thereafter ”. Furthermore, the 1956 agreement was substantially the same as the previous one, covered similar parties and the same subject matter and was nothing more than a continuation of a general collective bargaining agreement between Eastern Greyhound Lines Inc. and its employees. Logically, if the petitioner is declared to be a party to the 1956 agreement, it would be bound by the prerequisite permission contained therein, either as a modification (change) of the 1953 agreement, or as a provision included in a subsequent agreement intended to terminate and supersede the previous one. (See 1953 Contract, art. XXV.) Therefore, the right to arbitrate, as expressed under the old agreement, does not survive since the modification was obviously written into the arbitration clause to instantly control and prevent the very situation which is now before the court. In this respect, petitioner should not rely upon Matter of Lane (Endicott Johnson Corp.) (274 App. Div. 833, affd. 299 N. Y. 725, cert. denied 338 U. S. 892). There, a contract with the union was terminated entirely and the company denied its responsibility to arbitrate grievances which had arisen before the expiration simply because the contract was no longer in existence. Here, the 1953 contract was succeeded by the 1956 contract which, furthermore, did not extinguish arbitrational remedies for Local 1202. On the contrary, the respondent does not deny the right to arbitrate grievances; it merely insists that there *381 be compliance with the terms of the new governing agreement before arbitration is effected.
In determining whether the petitioner was a party to the 1956 agreement the court must be guided by section 1450 of article 84 of the Civil Practice Act which states, in part: ‘ ‘ The court * * * upon being satisfied that there is no substantial issue as to the making of the contract * * * shall make an order directing the parties to proceed to arbitration ”. At the outset, the court must determine whether there was a contract, and, if unable to do so, to try that issue. (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76.) On this showing, however, the court is satisfied that the petitioner was a party to the 1956 agreement. While not a signatory, Local 1202 does not deny that it took part in the negotiations; that it is presently operating under and receiving benefits thereunder; that it is a member of the Eastern Executive Council; that it is listed as a party to the agreement; that its members ratified, and agreed to, its terms. Petitioner merely alleges that it did not sign the agreement. The law is that while contracts to arbitrate controversies must be in writing, they need not be signed so long as there is indicative proof of actual agreement. (Matter of Helen Whiting, Inc. [Trojan Textile Corp.], 307 N. Y. 360.) Accordingly, the court finds that the petitioner agreed to the terms of the 1956 collective bargaining agreement, but has not complied with its terms as to arbitration.
Secondly, and in further support of the denial of the instant application, section 1448 of article 84 of the Civil Practice Act provides, in part: ‘ ‘ A written submission or provision in a written contract between a labor organization * * * and employer * * * to settle by arbitration a controversy * * * thereafter arising between parties to the contract * * * shall likewise be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract, without regard to the justiciable character of such controversy”.
Historically, before this section was enacted, the courts were reluctant to compel specific performance of an agreement to arbitrate. (Sinclair v. Tallmadge, 35 Barb. 602; Hurst v. Litchfield, 39 N. Y. 377.) After the passage of article 84, the courts have applied broad principles of equity to such motions and have treated them in the same manner as any other action to compel specific performance. (Matter of Feuer Transp., Inc. [Local No. 445], 295 N. Y. 87.) However, granting specific performance in this action would not be doing equity. For, assuming, as the petitioner says, arbitration may be compelled *382 under the old contract, what might follow could well affect rights of those with no authorized voice to defend those rights. Any despoilment, permitted in the name of arbitration, is unthinkable.
Petitioner’s dispute is essentially not with the employer respondent, but with Locals 1063 and 1210. It is a dispute as to seniority rights caused by a rerouting of bus schedules, initially caused by the building of superhighways and turnpikes, which have brought on infringement in areas previously under the jurisdiction of a single local. The agreement of 1956 recognizes this and provides for methods to solve these problems within the union itself. If this had not been done, the respondent would have found itself in the uncomfortable position of arbitrating separately with each local which felt aggrieved by the action of a brother local. The respondent would then be in the same position as a stakeholder in a dispute between various parties without the right of interpleader. Plainly, to permit arbitration in this case would lead to inequitable, rather than equitable results. And to permit a local to take selfish and unilateral action would defeat one of the purposes of collective trade unionism.
The petitioner has been invited to submit its grievance to the Eastern Executive Council. This appears to be the proper forum for this arbitration.
Accordingly, the motion to compel arbitration is denied. Settle order on or before July 8, 1957.