In the Matter of the Arbitration between Charles E. Gallagher, as President of Esso Tanker Men's Union, Appellant, and Esso Standard Oil Company, Respondent.

First Department, February 16, 1960.

*Howard Schulman* of counsel (*Arthur Abarbanel* with him on the brief; *Howard Schulman* attorney), for appellant.

*A. Donald MacKinnon* of counsel (*Edward J. Reilly, Jr.,* with him on the brief; *Milbank, Tweed, Hope & Hadley,* attorneys), for respondent.

VALENTE, J. In May, 1959, appellant Union demanded arbitration pursuant to a provision of a collective bargaining agreement, dated May 15, 1956, between the union and Esso Standard Oil Company (herein called the '' Company '') which provided for arbitration of '' Any question as to the interpretation of this Agreement or any question of fact arising out of an alleged violation of the terms of this agreement ''. The dispute tendered for arbitration embraced the wages and working conditions of unlicensed seamen employed aboard the Company's tied-up or inactive vessels.

While the Union relies upon an interpretation of the 1956 agreement to resolve its claimed dispute, the Company urges that the question of the wages and working conditions of the seamen in tied-up ships specifically is governed by a September 16, 1957 agreement, which supplemented the May 15, 1956 contract. However, the Union challenges the validity of the 1957 instrument, and contends it is a nullity since it purports to amend a July 2, 1957 agreement — looking to the extension of the 1956 agreement — which was never ratified by the Union. The Company, on the other hand, contends that although the July 2, 1957 agreement failed of ratification by the members, the Union and the Company have treated the September 16, 1957 agreement as a supplement to the May 15, 1956 contract.

Thus, we are met at the outset with a dispute between the parties as to the existence and validity of the September, 1957 agreement. If it is a valid contract supplementing the 1956 agreement, there is no bona fide arbitrable issue between the Union and the Company as to the wages payable to personnel of tied-up ships because they are being paid in accordance with the provisions of the September, 1957 agreement. And in the absence of an arbitrable dispute, the Union may not compel arbitration (*Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers of America*], 300 N. Y. 262; *Matter of Essenson* [*Upper Queens Med. Group*], 307 N. Y. 68; *Matter of International Assn. of Machinists* [*Cutler-Hammer*], 271 App. Div. 917, affd. 297 N. Y. 519). Conversely, if the 1957 agreement be invalid — as contended by the Union — a proper arbitrable question is presented by the Union's demand.

We are called upon to decide who is to determine the validity of the 1957 agreement, the court or the arbitrators. In reaching that determination, we must keep in mind that the issue is one of the existence and validity of the supplemental 1957 agreement and not one arising under the composite 1956 agreement as supplemented by the 1957 arrangement. We have concluded that the question of the validity of the 1957 agreement is one for the court, and not for the arbitrators.

The Union's challenge to the September, 1957 agreement rests on the contention that it was not executed by the full governing body of the Union, was not submitted to the members for acceptance or rejection and, on its face, is a nullity in that it purports to amend the nonexisting agreement of July 2, 1957 which failed of ratification by the members. But the Company has averred that the parties recognized the September 16, 1957 contract, and acted under it for two years without the Union ever raising any questions as to its validity and binding effect. It must be obvious that this dispute, as to the validity of the September 16, 1957 contract, is not, under the terms of the arbitration clause of the 1956 agreement, one involving an interpretation of the 1956 contract or any question of fact arising out of the alleged violation of that agreement. Since the dispute does not fall within the ambit of the arbitration clause of the 1956 agreement, there cannot, for this additional reason, be any arbitration of the validity and binding effect of the September 16, 1957 contract.

In summary, there is a preliminary issue to be determined as to the existence of the contract between the parties. If the agreement of September 16, 1957 never came into existence, the Union is entitled to arbitrate the claimed dispute. On the other hand, if the agreement of September 16, 1957 is a binding commitment, there is no arbitrable issue. Whether the contract came into existence is one for the court initially to decide, and not for arbitrators.

The order denying the motion to compel arbitration should be modified to the extent of remanding the motion to Special Term for a trial on the issue of the existence and validity of the September 16, 1957 contract, and as so modified, affirmed, without costs. Disposition of the motion to compel arbitration is to be held in abeyance pending trial of that issue and then determined in accordance with the views expressed in this opinion.

STEVENS, J. (dissenting). I dissent, vote to reverse and grant the motion to compel arbitration.

The parties hereto, hereinafter referred to as the '' Union '' and the '' Company '', entered an agreement effective May 15,

1956, which covered wages, hours and working conditions of the unlicensed personnel on respondent's vessels. The agreement, which extended to June 30, 1957, was ratified by the members of the Union and was to remain effective thereafter from year to year unless changed by the parties.

July 2, 1957, another agreement was negotiated by the parties which failed of ratification by the Union membership as required. Prior to such failure and on or about September 16, 1957, the parties negotiated an agreement effective August 23, 1957, entitled "Amendment to Agreement of July 2, 1957" which purported to cover unlicensed personnel on "tied-up" ships. This amendment was never submitted to the membership for ratification, and thereafter as heretofore indicated, the July 2, 1957 agreement was rejected.

In April or May, 1959, a dispute arose concerning the wages and working conditions of unlicensed personnel in the "tied-up" fleet of the Company. The Union contended such persons were not being paid the wages called for by the agreement of 1956, as later amended effective October, 1957, and October, 1958, and that this condition had existed since August 23, 1957.

The Company asserted the men were being paid wages, etc., in accordance with the provisions of the September 16, 1957 agreement, effective as of August 23, 1957, which it claims the parties recognized and which, when the July 2, 1957 agreement failed of ratification, they regarded and intended to be an amendment to the 1956 agreement. The Company says the 1956 agreement covered only personnel on active vessels, and the September 16, 1957 agreement was a supplement thereto. The Union rejects this view, says that the 1956 agreement covered all personnel, and terms the September 16, 1957 document "an amendment to a non-existing agreement."

The 1956 agreement contained an arbitration clause which provided: "Any question as to the interpretation of this Agreement or any question of fact arising out of an alleged violation of the terms of this agreement, which is not otherwise settled, shall, at the request of either party, be submitted to a Board of Arbitration."

Since the parties differ on the interpretation and application of the 1956 agreement this question under the language of that agreement is one for initial determination by the arbitrators. It is clear that any hiatus occurring because of the expiration of any collective bargaining agreement was to be controlled by the 1956 agreement, which provided that it was to remain effective until changed by the parties.

It is agreed that the July 2, 1957 agreement never became effective. The question is posed whether there can be an amendment to a noneffective agreement. Obviously not. An amendment to a document presupposes the existence of a basic document. An analogy may be drawn from the world of physical properties. If a frame or foundation collapse or be removed, that which is appended to it will not remain suspended in thin air, but by the pull of gravity will fall or by reason of its attachment follow the course pursued. This is not to say the parties did or did not intend the September 16, 1957 agreement to amend or supplement the 1956 agreement. That is for the arbitrators to decide. There is a genuine dispute, regardless of the merits of either position, concerning wages and hours of the men involved, but the resolution of that dispute must first depend upon a determination as to whether the amendment is part of the 1956 agreement. That calls for an interpretation of that agreement and the parties agreed that is a question for the arbitrators.

" On a motion to compel arbitration the court may only consider the existence of an agreement to arbitrate and whether there is a dispute arising thereunder " (*Matter of Carey* [*Westinghouse Elec. Corp.*], 6 A D 2d 582, 583, affd. 6 N Y 2d 934). The parties here recognize the existence of the 1956 agreement, and there is a material question posed as to its interpretation, its application and whether or not there was any violation of its terms. The language of the documents is not so clear nor the acts of the parties so conclusive that we can say as a matter of law there is no bona fide dispute. (See *Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers of America*], 300 N. Y. 262.) On the contrary, in the view I take the matter in dispute clearly appears to be within the scope of the bargaining agreement and properly arbitrable under the arbitration clause. " The rule would now seem to be settled that subsequent acts or documents purporting or claimed to terminate an agreement containing a broad arbitration clause, if in dispute, raise issues for the arbitrators and not for the court (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *Matter of Aqua Mfg. Co.* [*Warshow & Sons*], 179 Misc. 949, affd. 266 App. Div. 718)." (*Matter of Stein-Tex* [*Ide Mfg. Co.*], 9 A D 2d 288, 289.)

At best the offer of the September 16, 1957 document, which is claimed to be an amendment, — which, incidentally, the Union denies was ever properly executed, — is merely by way of defense to the claim made by the Union and which it seeks to arbitrate under the contract. Defenses to a claim, of course, must be decided by the arbitrator.

The order appealed from should be reversed, and the motion to compel arbitration and designate and appoint an arbitrator granted.

M. M. FRANK and McNALLY, JJ., concur with VALENTE, J.; STEVENS, J., dissents and votes to reverse and grant arbitration, in opinion in which RABIN, J. P., concurs.

Order denying the motion to compel arbitration modified to the extent of remanding the motion to Special Term for a trial on the issue of the existence and validity of the September 16, 1957 contract, and as so modified, affirmed, without costs. Disposition of the motion to compel arbitration is to be held in abeyance pending trial of that issue and then determined in accordance with the views expressed in the majority opinion. Settle order.