■ In the Matter of the Arbitration between SAMUEL BRONSTON, Appellant, and BARNETT GLASSMAN, Respondent.— Order entered on January 13, 1961, which denied petitioner's motion for a stay of arbitration, affirmed on the law and on the facts, with $20 costs and disbursements to respondent. On January 4, 1952, petitioner and respondent entered into a written agreement wherein and whereby respondent undertook and agreed to render certain personal managerial and related services to petitioner in return for compensation. The agreement, which by its terms, was to run to December 31, 1961, contained a broad arbitration clause. On May 29, 1959, an agreement was entered into between the parties hereto, their wives and certain corporations. The agree-

ment referred to certain disputes among the parties, including certain motion picture deals, and adjustment of such disputes with reservation of particular rights, and provided for the exchanging of general releases "excepting only rights under this agreement." The agreement of January 4, 1952, is neither cited nor referred to in the May 29, 1959 agreement. On June 25, 1959, pursuant to the agreement dated May 29, 1959, respondent Glassman and his wife executed a general release to Bronston and his wife, excepting only the obligations arising out of the May 29, 1959 agreement. Subsequently, respondent served a demand for arbitration, dated October 5, 1960, under the provisions of the arbitration clause contained in the agreement of January 4, 1952. Petitioner sought to stay arbitration, contending that the argeement was terminated or cancelled by reason of the May 29, 1959 agreement and June 25, 1959 release. The motion was denied, and petitioner appealed therefrom, asserting here essentially the same arguments advanced at Special Term. The record indicates some further work by respondent in 1960, in allegedly adjusting a claim or judgment of some $30,000 against petitioner for $8,000. Respondent asserts this evidences that the 1952 contract was very much alive, an assertion which petitioner denies. Neither the May 29, 1959 agreement, nor the later release of June 25, 1959, was solely between the parties to the January 4, 1952 agreement, nor did either instrument mention the 1952 agreement which by its terms ran to December 31, 1961, and dealt with personal services from respondent to petitioner. There is a valid dispute as to the scope of the release, the respondent contending that it must be read in relation to the May 29, 1959 agreement to which it refers, and that it does not and was never intended to refer to or terminate the 1952 agreement. This is a question to be resolved by the arbitrators. (*Matter of Stein-Tex* [*Ide Mfg. Co.*], 9 A D 2d 288, motion for leave to appeal denied 10 A D 2d 557, 7 N Y 2d 711.) Concur — Botein, P. J., Rabin, Stevens and Eager, JJ.; Valente, J., dissents and votes to reverse and grant the application in the following dissenting memorandum: Respondent sought arbitration under an agreement dated January 4, 1952, pursuant to which respondent agreed to render managerial services to appellant from January 4, 1952 through December 31, 1961. A number of disputes arose between the parties under the contract, as well as to other matters, which culminated in a settlement agreement, executed on May 29, 1959, containing the following provision: "Except for the rights and obligations contained in this agreement, all other claims which any of the parties hereto may have against any other party hereto are released and forgiven and each of the parties hereto will deliver to each other party hereto duly executed, standard form general releases excepting only rights under this agreement." The parties to the settlement agreement included appellant and respondent herein, their wives, and certain corporations. Thereafter, on June 25, 1959, pursuant to the agreement of May 29, 1959, respondent and his wife executed a general release to appellant and his wife. That general release, on its face, releases clearly and completely every manner of claim, right or contract theretofore existing up to the date of the release. The release unquestionably terminated the provisions of the 1952 contract, pursuant to which respondent sought an arbitration. It is unambiguous and there can be no question of its interpretation (see *Lucio* v. *Curran*, 2 N Y 2d 157). Until it is set aside, there is no existing enforcible contract upon which to predicate an arbitration (*Matter of Minkin* [*Halperin*], 279 App. Div. 226, affd. 304 N. Y. 617). Any claim by respondent that the general release does not mean what it says on its face, or that it should be reformed because of alleged mistake, or that it should be vacated for fraud

must be asserted in an action in equity for that purpose. Arbitration under the 1952 agreement may not resolve any of those issues. *Matter of Stein-Tex (Ide Mfg. Co.)* (9 A D 2d 288) is distinguishable since there an issue was raised as to whether the release, when read together with an accompanying letter, was a limited release. In the instant case, there is no basis for any issue challenging the broad language of the general release. If arbitration is to be permitted in this case, no release, irrespective of its clarity and unequivocal language, is safe from collateral attack by the mere assertion by a party that he did not intend to mean what the release says. We undermine the foundations of general releases if we permit arbitration here. I therefore dissent, and would reverse and grant the application to stay the arbitration.