In the Matter of the Arbitration between ALBERT J. FITZGERALD, as President of United Electrical, Radio and Machine Workers of America (UE), Appellant, and GENERAL ELECTRIC COMPANY, Respondent.

First Department, June 10, 1965.

*Frank J. Donner* of counsel (*Robert Z. Lewis* with him on the brief), for appellant.

*David L. Benetar* of counsel (*Thomas F. Hilbert, Jr., Robert C. Isaacs* and *Michael I. Bernstein* with him on the brief; *Nordlinger, Riegelman, Benetar & Charney,* attorneys), for respondent.

McNALLY, J. In this proceeding to compel arbitration in accordance with provision therefor in a collective bargaining agreement, the question presented is whether the grievances involve arbitrable disputes.

The collective bargaining agreement between petitioner and respondent dated October 27, 1960 provides for grievance procedure as to any dispute or grievance, and for arbitration thereof if it remains unsettled and involves " the interpretation or application of a provision of this Agreement ", with the provision that if either party advises the American Arbitration Association that the grievance does not raise an arbitrable issue then it shall not have the authority to process the request for arbitration until a court has adjudicated the issue of arbitrability. Pending any grievance or dispute, the union covenants not to cause any strike or related action.

Respondent's janitors, porters and charwomen, within bargaining units of respondent's Baltimore and Fort Edward plants, are represented by petitioner's Locals 120 and 332. On or about January 10, 1961 and March 2, 1961, Local 120 initiated grievances charging respondent with violations of articles I and XII of the agreement in that it subcontracted the work theretofore performed by members of Local 120. The relevant portion of article I is respondent's recognition of the petitioner and its certified locals as the exclusive bargaining representatives of its employees within the certified units. The pertinent portion of article XII requires the application of certain factors in respect of layoffs or transfers, the major one being seniority.

The grievance procedures were exhausted. Petitioner requested arbitration on March 8, 1961 as to the grievance initiated in January, 1961, and on March 29, 1961 as to the one initiated in March, 1961. In each case the respondent advised the arbitration forum it was of the opinion the grievance did not raise an arbitrable issue. Petitioner on September 19, 1961 instituted this proceeding to compel arbitration. The order appealed from entered July 2, 1962 dismisses the petition on the ground that the disputes do " not involve interpretation or application of any provision of the collective bargaining agreement ". By stipulation of the parties argument of this appeal was deferred pending the application for certiorari before the United States Supreme Court in *International Union*

*of Elec., Radio & Mach. Workers, AFL–CIO* v. *General Elec. Co. (infra).*

The agreement provides its interpretation and application shall be governed by the law of the State of New York. Federal and New York State law are alike in respect of arbitration pursuant to collective bargaining agreements. (*Matter of Long Is. Lbr. Co. [Martin]*, 15 N Y 2d 380.)

'' It is only where the parties have employed language which clearly rebuts the presumption of arbitrability, e.g., by stating that an issue either as to procedure or as to substance is *not* to be determined by arbitration, that the matter may be determined by the courts. In the absence of such unmistakably clear language, as here, the matter is sent to the arbitrator for his determination on the merits. (See *Steelworkers* v. *Enterprise Corp.*, 363 U. S. 593 [1960]).'' (*Matter of Long Is. Lbr. Co. [Martin]*, *supra*, p. 385.)

The agreement here provides for arbitration of '' any dispute ''. The reservation of exclusive management authority in the respondent contained in article XXVII thereof does not serve to exclude from the all-inclusive provision for arbitration the grievances here involved. (*Steelworkers* v. *Warrior & Gulf Co.*, 363 U. S. 574, 583.) The petitioner's precontract demand for a limitation of the respondent's subcontracting practice is irrelevant. (See dissenting opinion of WHITTAKER, J., in *Steelworkers* v. *Warrior & Gulf Co.*, *supra*, p. 588.) (*International Union of Elec., Radio & Mach. Workers, AFL–CIO* v. *General Elec. Co.*, 332 F. 2d 485, 488–490, cert. den. 379 U. S. 928.)

On this record arbitration may not be denied because the disputes in issue are within the scope of the broad provision for arbitration and no provision of the contract serves to exclude them from arbitration. Moreover, if there were doubt, it would be '' resolved in favor of coverage ''. (*Steelworkers* v. *Warrior & Gulf. Co.*, *supra*, p. 583; *Matter of Long Is. Lbr. Co. [Martin]*, *supra*.)

The order should be reversed, on the law, with costs and disbursements to petitioner-appellant, and the motion to direct arbitration granted.

BREITEL, J. P. (dissenting). I dissent. The majority holding is predicated on the premise that the parties agreed to submit '' any dispute '' to arbitration. That holding requires arbitration of an issue that the parties never agreed to submit to arbitration. Despite the parties' express stipulation in the arbitration clause in this collective bargaining agreement that a

court must first pass on the arbitrability of a dispute, this court now leaves that very issue of arbitrability to be determined by the arbitrators. The court does so without so much as examining the scope of the agreement to arbitrate.

The court concludes, despite earlier references to a limitation, that the agreement provides for arbitration of " any dispute ". On the contrary, the agreement, so far as it is here applicable, requires arbitration only of " Any grievance  *  *  *  which involves  *  *  *  the interpretation or application of a provision of this Agreement."[1] Thus the right to arbitration was not extended broadly to any dispute or controversy that might arise between the parties, nor even to any dispute that might arise in the performance of the contract. It was explicitly limited to issues of construction of the agreement. Presumably all other issues were to be resolved through the normal processes of collective bargaining, or, where legal rights would be involved, through litigation.

The agreement recognizes, moreover, that threshold issues of arbitrability may easily arise under this limited arbitration clause. The clause goes on to provide, therefore, that these threshold issues must first be resolved by the court in favor of arbitration before the arbitrators are vested with jurisdiction to decide the substantive dispute. The agreement accomplishes this by conferring jurisdiction on the arbitrators " only after a final judgment of a Court has determined that the grievance

---

1. The text of section 1 of article XVII is:

"1. Any grievance which remains unsettled after having been fully processed pursuant to the provisions of Article XVI, and which involves either,

 " (a) the interpretation or application of a provision of this Agreement, or

 " (b) a disciplinary penalty (including discharge) imposed on or after the effective date of this Agreement, which is alleged to have been imposed without just cause,

"shall be submitted to arbitration upon written request of either the Union or the Company, provided that such request is made within 30 days after the final decision of the Company has been given to the Union pursuant to Article XVI, Section 1(c)(5). The Union may withdraw from arbitration any grievance it submits if within ten days from the date the Company advises the Union in writing that the grievance so submitted does not, in the opinion of the Company, raise an arbitrable issue, the Union notifies the Company in writing that it withdraws the grievance from arbitration. A failure on the part of the Union to withdraw a grievance during said 10 day period shall preclude withdrawal at a later date and *thereafter all questions concerning arbitrability shall be determined in accordance with the procedures set forth in Section 2(b) of this Article.* For the purpose of proceedings within the scope of (b), above, the standard to be applied by an arbitrator to cases involving disciplinary penalties (including discharge) is that such penalties shall be imposed only for just cause." (Emphasis supplied, and the article to which the emphasized material refers is set forth in the next footnote following.)

upon which arbitration has been requested raises arbitrable issues and has directed arbitration to such issues."[2]

In view of the limited scope of the arbitration agreement now before the court, decisions involving broad clauses are not in point. As this court stated in *Matter of Uddo (Taormina)* (21 A D 2d 402, 405): "Confusion may arise from the holdings interpreting broad clauses in agreements which provide as arbitrable any question that may arise under or in connection with the making, meaning or performance of the particular contract." Patently, *Matter of Long Is. Lbr. Co. (Martin)* (15 N Y 2d 380) is not in point, as there the agreement requiring arbitration of "all grievances" without limitation was unquestionably broad enough to cover the substantive issue, namely, the applicability of a wage agreement to a particular individual. The arbitration clause covering, as it did, the substantive dispute, the court held that compliance with procedural prerequisites was to be determined by the arbitrator. The substantive scope of the arbitration clause was simply not an issue.

Thus, Judge BURKE wrote in the *Lumber* case that "In the light of these cases, questions of timeliness and compliance with step-by-step grievance procedures, prior to formal and final binding arbitration, are questions of 'procedural arbitrability'. Now it is clear that such questions must be left to the arbitrator" (p. 386). And again: "But, as we have indicated above, the rule which we have recognized and followed leaves *all* procedural questions for the arbitrator to consider along with the substantive issues involved in the arbitration claims" (p. 387). Because the substantive clause in the case was broad and unlimited, none of this reasoning has pertinence for the instant case.

Where there is an arbitration clause as to interpretation, without any express stipulation for judicial finding of arbitrability, and any question of interpretation of the agreement

---

2. Paragraph (b) of section 2 of article XVII provides: "It is further expressly understood and agreed that the American Arbitration Association shall have no authority to process a request for arbitration or appoint an arbitrator if either party shall advise the Association that such request arises under Section 1(a) of this Article, but that the grievance desired to be arbitrated does not, in its opinion, raise an arbitrable issue. In such event, the Association shall have authority to process the request for arbitration and appoint an arbitrator in accordance with its rules only after a final judgment of a Court has determined that the grievance upon which arbitration has been requested raises arbitrable issues and has directed arbitration of such issues. The foregoing part of this subsection (b) shall not be applicable if by its terms the request for arbitration requests only relief from a disciplinary penalty or discharge alleged to have been imposed without just cause."

arises, the situation is simpler. Thus, in *Steelworkers* v. *American Mfg. Co.* (363 U. S. 564), the court was faced with a collective bargaining agreement, which, not unlike the one at bar, required arbitration of "Any disputes, misunderstandings, differences or grievances arising between the parties as to the *meaning, interpretation and application* of the provisions of the agreement" (p. 565, n. 1; emphasis added). The substantive issue on which the union sought arbitration was whether an injured employee, who had settled a compensation claim on his attorney's representation that he had a permanent partial disability, was entitled to return to his job (for a statement of facts, see 264 F. 2d 624). This, of course, raised an arbitrable question of interpretation, as the contract allowed management to discharge an employee "for cause", and required the company to recognize the principle of seniority as a factor in re-employment "where ability and efficiency are equal." The majority opinion recognized the existence of a dispute as to interpretation, and reversed the judgment below, which dismissed a complaint to compel arbitration, on the ground that even frivolous claims should proceed to arbitration. The court thus rejected the "*Cutler-Hammer*" doctrine, which is, of course, no longer the law of New York (CPLR 7501; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7501.20).

Of critical significance to the instant case, however, is the Supreme Court's holding in *Steelworkers* v. *American Mfg. Co.* that the scope — the substantive scope — of the arbitration clause is for the court, not the arbitrator. Thus the court stated (pp. 567–568) : " The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." Thus the court may not look behind the face of the claim and examine the merits of the claim or even decide whether the dispute is different from what the party seeking arbitration says it is. It must take the claim as framed by the party and determine whether that claim raises an issue of interpretation of the contract. This question of groundless but included disputes is a different problem from that of procedural limitations in arbitration, and, of course, it is yet again different from that of limitations in arbitration clauses on the substantive scope.

That the court must itself determine whether the parties have agreed to arbitrate the particular dispute is also the law of this State (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76, 80; *Matter of Rosenbaum* [*Amer. Sur. Co. of N. Y.*], 11 N Y 2d

310, 314; *Matter of Carey* v. *Westinghouse Elec. Corp.*, 11 N Y 2d 452, 456, revd. on other grounds, 375 U. S. 261). It is, consequently, unnecessary to determine whether the express contract provision, present in the instant collective bargaining agreement, that New York law is to govern could override an inconsistent rule adopted by the Supreme Court under section 301 of the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 185) (see *Textile Workers* v. *Lincoln Mills*, 353 U. S. 448).

An examination of the substantive claim as framed by petitioner union shows that it does not raise an included issue as to interpretation or application of the contract. Both grievances submitted by the union charge that the company assigned or contracted out cleaning work previously done by company employees to an outside firm. One grievance declared this to be a violation of articles I and XII of the agreement and the other charged a violation of only article I.

Article I does not have any relationship to this or any other contracting out issue. Article I merely requires the company to recognize the union as the exclusive bargaining agent of employees within certified bargaining units. Moreover the union's petition states that the individuals who were to do the work, as contracted out by the company, were not even within the collective bargaining unit. Thus the real issue, as well as the issue framed by the union, does not involve questions of union recognition requiring an interpretation or application of article I.

Article XII deals solely with the procedure to be followed and the factors to be considered in determining which employees are to be laid off or transferred " due to lack of work ". Seniority is the major factor to be considered. Although a " seniority " issue, or other such issue under article XII, may well have attended or followed the company's decision to contract out certain work, the grievances and petition are wholly barren of any such allegation, as is the company's answer. In the absence of any such allegation there is not even the pretense of an arbitrable issue.

In briefing this matter on appeal the union has not even attempted to show that the contracting out dispute is " governed by the contract ", to use the Supreme Court's test (*Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 568, *supra*). It obviously is not. If, nevertheless, ambiguity were to remain, the prior negotiations demonstrate that the contract was not intended to forbid contracting out (i.e., to " govern " contracting out). In

these negotiations the union sought, but was unable to obtain a contract provision against contracting out.

The mere reference to articles I and XII in the demand for arbitration and conclusory allegations that they were violated do not make the issue an arbitrable one of interpretation. It is true that under *Steelworkers* v. *American Mfg. Co.* (*supra*) it is entirely the role of the party seeking arbitration to frame the dispute in any way it pleases. It may frame its demand to exclude part or all of the real dispute, and it may even, under that holding, demand arbitration of a claim that is obviously and totally devoid of merit. The Supreme Court teaches that the processing of even frivolous claims in arbitration may have " therapeutic values " (*Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 568). It is also true that under New York arbitration law the merits of the dispute are for the arbitrators not the court (CPLR 7501; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7501.20). These rules forbidding the court to examine the merits of the dispute do not even purport to change the well-established rule that the court must, in the first instance, determine whether the claim is one that the parties have agreed to arbitrate.

It follows from what has been said that a party may compel arbitration of any claim (however meritless) under a *broad* agreement to arbitrate, but may not compel arbitration of any claim (however meritorious) under a *limited* arbitration agreement by falsely characterizing that claim in order that it fall within an included category. It is always for the court, in the case of a limited arbitration clause, to reject a specious characterization of the claim actually made, regardless of its merits — indeed, even if of the greatest merit — and to determine whether there was an agreement to arbitrate that claim in its true category. This is particularly so where, as here, the parties have expressly bargained for a judicial examination of the nature of the claim. Any other view would mean that parties are powerless to limit the scope of arbitration, and that just is not so.

The *Bridgeport* case (*International Union of Elec., Radio & Mach. Workers* v. *General Elec. Co.*, 332 F. 2d 485, cert. den. 379 U. S. 928) decided by a divided court, if in point, is neither controlling nor persuasive. Although the union in this case describes the agreement involved in that case as " virtually " identical with the agreement in this case, the court in the *Bridgeport* case never discussed the express provision, if there was

one, for judicial advance determination of arbitrability. Such a provision is of vital significance.

There is no doubt that an agreement may contain limitations on the rights of the parties as distinguished from limitations on the right to arbitrate, or perhaps in rare cases even on the right to arbitrate, which are addressed to the arbitrators alone to govern their determinations. Such provisions are distinguishable from those in an agreement which are addressed to limiting the jurisdiction or power of the arbitrators to make determinations and which, therefore, are addressed to the court. This distinction creates the subtlest problems most difficult of resolution where the parties have not expressly related the issue to judicial determination. When the parties have stipulated that the limitation is one for judicial determination, as was done here, both the subtlety and difficulty of resolution disappear. (The distinction is made incisively by Mr. Justice Brennan in his concurring opinion in *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 571–572, *supra*.)

By compelling arbitration of this matter the court does the cause of labor arbitration, and more important, of labor peace, a disservice. The parties have bargained for a limited arbitration clause and for a court determination of the threshold question of arbitrability. Perhaps one party, or both, would not otherwise have agreed to any arbitration clause at all. If so, the prevailing holding may serve as a warning to the labor-relations Bar that the court will not examine the scope of a limited arbitration clause. The gravity of the problem is undoubtedly greater under industry arrangements where there are permanent arbitrators or impartial chairmen. Unless a party, fearful of unlimited arbitration, can anticipate all disputes that may arise in the future and obtain the other side's agreement to clauses expressly defining and forbidding arbitration of all such possible disputes, it must, and will, decline any arbitration agreement whatsoever. A rule of law throwing such an obstacle in the path of limited agreements to arbitrate does not forward, but actually thwarts, voluntary recourse to the arbitral forum for resolution of labor disputes. Instead of fostering labor peace, which is the expressed ground for the Supreme Court's policy in collective bargaining cases, recently espoused by our Court of Appeals in *Matter of Long Is. Lbr. Co.* (*Martin*) (15 N Y 2d 380, *supra*), the result would discourage the use of limited arbitration clauses and thus encourage labor strife where the parties are unable to agree on unlimited arbitration.

Accordingly, I dissent and vote to affirm the order of Special Term dismissing the petition to compel arbitration.

Rabin, Valente and Stevens, JJ., concur with McNally, J.; Breitel, J. P., dissents in opinion.

Order, entered on July 2, 1962, reversed, on the law, with $30 costs and disbursements to appellant, and the motion to direct arbitration granted, with $10 costs.