In the Matter of MORGAN GUARANTY TRUST COMPANY OF NEW YORK et al., as Executors of OTTO KNOPF, Deceased, Respondents, against LILLIAN WASSERMAN, Respondent-Appellant.

In the Matter of the Arbitration between LILLIAN WASSERMAN, Appellant, and JULIUS WEISS et al., as Executors of OTTO KNOPF, Deceased, Respondents.

LILLIAN WASSERMAN, Appellant, v. JULIUS WEISS et al., as Executors of OTTO KNOPF, Deceased, Respondents.

First Department, April 12, 1960.

*Gustave H. Newman* of counsel (*Bernard Jeffrey* with him on the brief; *Evseroff, Jeffrey & Newman,* attorneys), for appellant.

*Jack E. Bronston* of counsel (*Weiss & Bronston,* attorneys), for Morgan Guaranty Trust Company of New York and another, respondents.

RABIN, J. P. The appellant, Lillian Wasserman, and the decedent of the respondents executors, Otto Knopf, together, owned all of the stock of a corporation. Wasserman was the minority stockholder and Knopf was the majority stockholder. On January 23, 1958 they entered into a written agreement which provided, *inter alia,* that in the event of the death of Knopf, Wasserman was to purchase his stock holdings. The price for such stock was to be the "book value" thereof as determined by the corporation accountant, based upon usual accounting practices.

With respect to value there was this further provision: "A financial statement prepared and certified by the Corporation's regular accountant, as herein provided, shall be submitted to the Corporation and the stockholders and/or their legal representatives as soon as practicable, and shall be deemed to be binding and conclusive upon both parties, unless either party shall have filed with the Corporation, within twenty (20) days after the submission of the statement, written objections thereto specifying in what particulars the account is incorrect or improper. In the event of a dispute which is not amicably

resolved, the question of value shall be submitted to arbitration as herein provided." In addition to the specific arbitration provision contained in this clause there was a broad general arbitration clause which provided for the determination of " Any controversy or claim arising out of or relating to this agreement or its interpretation, or the breach thereof " by arbitration before the American Arbitration Association.

After the death of Knopf the accountant prepared a statement fixing the " book value ". Lillian Wasserman was given a copy of such statement and one was sent to the executors. Neither party voiced any objection thereto and a formal closing of title to the stock was had. At the closing, Wasserman paid a deposit and the parties arranged that the balance of the purchase price, as fixed by the accountant, was to be paid in six installments. As security for such balance the shares of stock purchased were indorsed in blank and delivered to the executors together with a proxy. The closing transaction was evidenced by a memorandum signed by the parties.

Subsequent to the closing, Wasserman allegedly obtained information which led her to believe that the " book value " computed had included a substantial account receivable which was uncollectible and that the accountant had not made allowance for certain claims against the corporation. She claimed therefore that the computed " book value " was incorrect and caused a demand for arbitration to be served upon the executors seeking " [a] recomputation of the net worth of the corporation for the purpose of a re-evaluation of the closing price, for the purchase of the stock ". The executors moved to stay the arbitration and Wasserman cross-moved for a direction to arbitrate. Shortly thereafter, as a protective measure, she commenced an action to enjoin the transfer of the stock and to prohibit the executors from voting said stock or interfering with the operation and control of the corporation. She also sought an injunction *pendente lite*. The executors cross-moved to dismiss the complaint in the injunction suit for insufficiency.

All of the motions were disposed of in one order which stayed arbitration, denied the temporary injunction and dismissed the complaint with leave to replead.

The chief position of the respondents is that the issue of price may not now be the subject of arbitration because " [t]he closing agreement took that particular issue out of arbitration." In support of that position they cite the case of *Matter of Minkin (Halperin)* (279 App. Div. 226, affd. 304 N. Y. 617) and say that this case is " governed " by that decision. The *Minkin* case is quite different from this one and it is of no help to the

respondents. In that case there was a second agreement which expressly cancelled the first containing the clause upon which the demand for arbitration was based. It did so in no uncertain language. It provided that the agreement, which contained the arbitration clause, '' is hereby canceled and declared of no further force and effect '' (p. 227). It allowed no room for misunderstanding nor did one have to speculate upon its effect or what it intended to accomplish. Its validity, however, was attacked by the claim that it had been executed under duress and coercion. The Appellate Division stayed the arbitration, holding that until the second agreement was set aside by a court of equity it effectively cancelled the first and there could be no arbitration. This determination was sustained by the Court of Appeals by a divided court.

This case differs from the *Minkin* case in a most material respect. In contrast to *Minkin* the closing memorandum here involved contains no express cancellation of either the stockholder's agreement or of the arbitration provisions which were a part thereof. Nor does it contain any language which would tend to vitiate either of the arbitration clauses contained in that agreement. At best, there is a dispute as to the effect of that memorandum — respondents saying that it cancelled the specific arbitration clause contained in the price provision of the agreement and the appellant urging that it did not have that effect. Before we can determine whether there was a survival of the right to arbitrate price under the specific arbitration provision contained in the price clause, there must first be determined the effect of the closing statement as it ·relates to that clause. There is a reasonable dispute between the parties as to that issue and the broad general arbitration clause comes into play. Under the doctrine laid down in the *Matter of Lipman* (*Haeuser Shellac Co.*) (289 N. Y. 76), that dispute must be resolved by the arbitrators as provided for by that clause. It lies within the province of the arbitrators to determine what effect that memorandum has on the present dispute with respect to price. (See *Matter of Stein-Tex* [*Ide Mfg. Co.*], 9 A D 2d 288.)

However, the appellant presents a more specific and perhaps more cogent reason for rejecting the argument advanced by the respondent to the effect that the closing memorandum foreclosed the right to arbitrate the question of '' book value '' or price to be paid for the stock because, as urged by the respondents, it appears that the accountant's price had been accepted and agreed upon.

The appellant says that the closing was not a final one; that no final agreement as to price had been arrived at nor had the

accountant even fixed a final figure of net worth. In support of that position she points to the following in the general introduction of the closing statement: " The net worth of the Corporation on which the price is based has been *tentatively* determined and computed in accordance with the certified report of Herwood & Herwood dated February 14, 1959, a copy of which has been supplied to each of the parties." (Italics added.)

She also points to the following specific reference with respect to the tentative nature of the valuation: " The closing in the meantime is to be on the basis of the tentative valuation of $43,970.83."

The appellant therefore argues that there was no final adjustment between the parties and the matter of price was still open. Being open it was still subject to dispute and subject to arbitration in the event of a failure to agree. The respondent argues, however, that the ultimate price remained open only subject to an upward adjustment and for no other purpose. Here again we have a dispute as to the proper interpretation of the closing statement, more specifically as to final price which seems to have been left open by the memorandum. That kind of a dispute the parties agreed to settle by arbitration — both under the specific and the broader general arbitration clause.

But, say the respondents, the accountant having computed the " book value " and no objection thereto having been made, such value became " binding and conclusive " and thus there remains no question to be arbitrated. Apart from the fact that on argument respondents stated that they do not urge the time limitation as a bar to arbitration and apart from the cases which hold that the effect of a time limitation is for the arbitrators to determine (*Matter of Tuttman* [*Kattan, Talamas Export Corp.*], 274 App. Div. 395; *Matter of Raphael* [*Silberberg*], 274 App. Div. 625), it appears that 20 days did not elapse between the rendition of the accountant's statements and the closing. It seems that the closing was had nine days after the statement was given to the appellant. If, therefore, it should be found that the price fixed at the closing was merely tentative, then there never was a " binding and conclusive " price fixed and a dispute in connection thereto would be subject to arbitration. Moreover, whether there was a waiver of the 20-day provision, because the closing was held prior to the 20-day period having elapsed or for any other reason, would be for the arbitrators to decide.

Assuming, however, that the 20-day provision were not waived and assuming also that the price were not left open by reason of the so-called " tentative " references in the closing statement,

would there then be no issue to be arbitrated? The respondents say that then the statement of the accountant is " binding and conclusive " and therefore there can be no arbitrable issue. But, can it be said that the statement is free from attack under any circumstances? Suppose it were developed that it was fraudulently prepared, may it not then be attacked? The answer seems to be yes, but it is not for the court to give that answer. The chosen tribunal of the contracting parties must make the determination. And if the arbitrators should decide that they may in such event go behind the accountant's statement, it is clear that not in every circumstance is it " binding and conclusive." May it not likewise be attacked if it is subsequently discovered that, contrary to the agreement, the accountant did not use proper accounting methods or that by mistake he overlooked items of importance that should have been considered in arriving at his final figure? Again the answer must be given by the arbitrators.

In this case the appellant alleges that subsequent to the closing date she learned that the accountant failed to make allowance for certain claims and that the accountant included a substantial account which was uncollectible. If that be true may it not be said that the statement was arrived at by the use of improper accounting practices? Would the accountant's statement in such circumstances be subject to attack? That raises an issue that the arbitrators must decide both under the specific arbitration clause and under the broader general arbitration clause — if not under the specific then certainly under the general clause.

For all of the reasons given above, we hold that there are issues presented which are arbitrable and therefore arbitration should not have been stayed.

Since it appears that arbitration is required there is no reason why the appellant should not be given the protection she seeks through her action for an injunction and by way of a preliminary injunction. Thus, the complaint must be held to be sufficient and the temporary injunction sought should be granted. However, certain restrictions on Wasserman's sole control and operation of the corporation should be imposed in order to properly protect the executors should it eventually be decided that the stock be applied to effectuate payment of any amount that may be found to be due.

Accordingly, the order should be reversed and the motion to stay arbitration denied and the cross motion to direct arbitration granted on the law and the facts and the cross motion to dismiss the complaint denied on the law and the motion for a

temporary injunction granted on the law and the facts and in the exercise of discretion, with costs to the appellant.

Settle order with suggestions as to what restraints or conditions, if any, should be imposed in connection with the temporary injunction.

M. M. FRANK, J. (dissenting). I must dissent and vote to affirm upon the carefully reasoned opinions of Mr. Justice MATTHEW M. LEVY at Special Term. (21 Misc 2d 438.) It is evident from the record that Lillian Wasserman, petitioner-respondent-plaintiff, does not claim fraud or fraud in the inducement. Nor does she seek rescission of the contract under which she purchased stock and made payment. I am reluctant to believe that parties to a contract that contains an arbitration clause may not subsequently compose their differences with finality, but must always thereafter be subject to a demand for arbitration. Moreover, nothing in the record indicates that the parties intended that the arbitration clause was to survive the closing.

This is not a case of a stranger seeking to purchase the stock of a corporation. For a long period prior to the closing of the transaction, Miss Wasserman had been an officer and director of the company, and, according to her sworn statement, had been running the business since 1951. There is no dispute that for at least a year preceding the death of the majority stockholder and up to the time she purchased his stock, she was in sole charge and in complete control of all company operations. No one was in a better position to know whether a substantial account receivable was uncollectible. There is no merit to her claim that the audit of the certified accountants, to which she made no objection and which she accepted as binding and conclusive, was incorrect.

Under the circumstances, there is no bona fide dispute which survived the closing.

McNALLY, STEVENS and BASTOW, JJ., concur with RABIN, J. P.; M. M. FRANK, J., dissents and votes to affirm in opinion.

Order reversed and the motion to stay arbitration denied and the cross motion to direct arbitration granted on the law and on the facts and the cross motion to dismiss the complaint denied on the law and the motion for a temporary injunction granted on the law and on the facts and in the exercise of discretion, with costs to the appellant. Settle order with suggestions as to what restraints or conditions, if any, should be imposed in connection with the temporary injunction.