■ ANNETTE FERRARELLA, Appellant, v KENNETH H. GODT et al., Defendants, and JOHN DIMARIO et al., Respondents. [15 NYS3d 180]—

In an action, inter alia, to rescind a contract based on fraud, the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Nassau County (Driscoll, J.), entered December 11, 2012, as denied her motion to stay arbitration and for preliminary injunctive relief.

Ordered that the appeal from so much of the order as denied that branch of the plaintiff's motion which was for preliminary injunctive relief is dismissed as academic; and it is further,

Ordered that the order is affirmed insofar as reviewed; and it is further,

Ordered that one bill of costs is awarded to the respondents.

The plaintiff owned Village Chapels, Inc. (hereinafter Village Chapels), a funeral home business, located in Middle Village, Queens. Village Chapels held title to the real property on which the funeral home business was situated. In September 2010, the plaintiff began negotiations to sell Village Chapels to her longtime employees and friends, the defendants John DiMario and George Luhring. The plaintiff retained the defendant Kenneth H. Godt, who had previously represented the plaintiff and her family for more than 20 years, as her attorney in connection with the subject sale. On December 4, 2010, the plaintiff executed a power of attorney appointing Godt as her attorney-in-fact.

In February 2011, the plaintiff and DiMario, Luhring, and the defendant Joseph Nunziata (hereinafter collectively the defendant purchasers) entered into a stock purchase agreement (hereinafter the February Stock Purchase Agreement). It is undisputed that the February Stock Purchase Agreement comported with the plaintiff's wishes and intentions. Pursuant thereto, the plaintiff agreed to sell 100% of the shares of Village Chapels for the purchase price of $2.8 million. That stock

sale would *include* the real property, subject to certain terms and conditions as set forth in an attached agreement of purchase and sale dated February 15, 2011 (hereinafter the February Purchase and Sale Agreement). Both the February Stock Purchase Agreement and the February Purchase and Sale Agreement were personally executed by the plaintiff. The February Stock Purchase Agreement contained an arbitration clause which provided, in pertinent part: "In the event any dispute shall arise pursuant to any term or provision of this Agreement, the same shall be settled by arbitration in accordance with the rules and regulations of the American Arbitration Association (hereinafter 'AAA') within the County of Queens."

The defendant purchasers allegedly were unable to procure financing because their lender required that the sale of the real property "be bifurcated and sold separately" from the stock of Village Chapels. In April 2011, a new stock purchase agreement (hereinafter the April Stock Purchase Agreement) and agreement of purchase and sale (hereinafter the April Purchase and Sale Agreement; hereinafter together the April agreements) were executed by DiMario, Luhring, and Godt, who signed as the "attorney-in-fact" for the plaintiff. In effect, the April agreements bifurcated the sale of the stock from that of the real property. Specifically, 100% of the stock of Village Chapels would be sold for the sum of $900,000 and the real property would be sold for the sum of $1.9 million. Notably, the April Stock Purchase Agreement contained an arbitration clause that was *identical* to the one included in the February Stock Purchase Agreement. Additionally, the April Stock Purchase Agreement stated: "Except as otherwise set forth herein, all other agreements dated prior to the date of this Agreement, if any, among the Corporation and the Stockholders relating to the disposition of the Stockholders' interests in the Corporation . . . are hereby superseded in their entirety by the terms and provisions of this Agreement."

The closing took place in August 2011, at which time the plaintiff personally appeared with Godt. At the closing, the plaintiff executed an indemnity agreement. The indemnity agreement recited that the parties entered into the February Stock Purchase Agreement, which "was modified and separated into two transactions" by the April agreements, wherein Village Chapels sold the real property to the defendant DiNunzlu Group, LLC, for $1.9 million and the funeral business was acquired by the defendant purchasers for $900,000. At the closing, the plaintiff also executed an escrow agreement wherein

Godt was to retain $500,000 to pay any tax liabilities resulting from the closing. With the consent of all parties, the defendant purchasers assigned the April Purchase and Sale Agreement to Dinunzlu Group, LLC, and the plaintiff executed the deed to the property naming Dinunzlu Group, LLC, as grantee.

Sometime in August 2011, the plaintiff's accountant allegedly notified her of certain tax consequences relating to the subject sale, and the plaintiff purportedly learned, for the first time, that, on December 7, 2010, Godt had been suspended from the practice of law.

In April 2012, the plaintiff commenced this action against, among others, Godt and the defendant purchasers, among other things, to rescind the April agreements based on fraud. The plaintiff alleged that she had consistently informed Godt and the defendant purchasers that she would not agree to an asset sale, as opposed to a stock sale, due to the potential tax consequences. She further alleged that Godt did not have the authority to execute the April agreements. According to the plaintiff, the defendant purchasers knew and concealed these facts, affirmatively misleading her into believing that the transaction was still a single stock sale.

In July 2012, the defendants filed for arbitration. Thereafter, the plaintiff moved to stay the arbitration and for preliminary injunctive relief. The Supreme Court, inter alia, denied the plaintiff's motion. The plaintiff appeals.

Arbitration is a favored method of dispute resolution in New York (see Board of Educ. of Bloomfield Cent. School Dist. v Christa Constr., 80 NY2d 1031, 1032 [1992]; Matter of Weinrott [Carp], 32 NY2d 190, 199 [1973]). "[T]he announced policy of this State favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties" (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 95 [1975]). "New York courts interfere 'as little as possible with the freedom of consenting parties' to submit disputes to arbitration" (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 93 [1991], quoting Matter of Siegel [Lewis], 40 NY2d 687, 689 [1976]). Parties to arbitration agreements should be prevented from using the courts as a vehicle to protract litigation (see Matter of Weinrott [Carp], 32 NY2d at 199). The threshold issue of whether there is a valid agreement to arbitrate is for the courts (see Matter of Primex Intl. Corp. v Wal-Mart Stores, 89 NY2d 594, 598 [1997]; Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1, 6-8 [1980]). Once it is determined that the parties have agreed to arbitrate the

subject matter in dispute, the court's role has ended and it may not address the merits of the particular claims (*see Matter of Praetorian Realty Corp. [Presidential Towers Residence]*, 40 NY2d 897, 898 [1976]; *see Matter of Prinze [Jonas]*, 38 NY2d 570, 577 [1976]; *Brown v Bussey*, 245 AD2d 255, 255-256 [1997]).

Initially, the April Stock Purchase Agreement superseded the February Stock Purchase Agreement in its entirety (*see Matter of Minkin [Halperin]*, 279 App Div 226, 228 [1951], *affd* 304 NY 617 [1952]). Thus, the issues raised on the appeal relate to the validity of the arbitration clause contained in the April Stock Purchase Agreement, not the February Stock Purchase Agreement. Essentially, the plaintiff contends that the arbitration clause set forth in the April Stock Purchase Agreement is invalid because (1) Godt forged the April Stock Purchase Agreement by exceeding his authority under the power of attorney, and (2) fraud permeated the entire April Stock Purchase Agreement. These contentions are without merit.

Contrary to the plaintiff's assertion, the arbitration clause contained in the April Stock Purchase Agreement was not invalid on the basis of forgery. Godt did not forge the plaintiff's signature to the April Stock Purchase Agreement. Instead, that agreement was signed by Godt, as the plaintiff's attorney-in-fact, pursuant to a valid power of attorney which was executed by the plaintiff on December 4, 2010. Thus, there was no forgery by Godt with respect to the April Stock Purchase Agreement (*see* Penal Law § 170.00; *People v Ippolito*, 20 NY3d 615, 624 [2013]; *People v Cunningham*, 2 NY3d 593 [2004]).

Similarly, the plaintiff's contentions regarding fraud are lacking in merit. In *Matter of Weinrott (Carp)* (32 NY2d at 190), the Court of Appeals ruled that an arbitration clause is generally separable from substantive provisions of a contract, so that an agreement to arbitrate is valid even if the substantive provisions of the contract are induced by fraud (*see id.* at 198; *Anderson St. Realty Corp. v New Rochelle Revitalization, LLC*, 78 AD3d 972, 974 [2010]). However, if a party can demonstrate that "the alleged fraud was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract" (*Matter of Weinrott [Carp]*, 32 NY2d at 197; *see Riverside Capital Advisors, Inc. v Winchester Global Trust Co. Ltd.*, 21 AD3d 887, 889 [2005]). "To demonstrate that fraud permeated the entire contract, it must be established that the agreement was not the result of an arm's length negotiation, or the arbitration clause was inserted into the contract to ac-

complish a fraudulent scheme" (*Anderson St. Realty Corp. v New Rochelle Revitalization, LLC*, 78 AD3d at 974 [citations omitted]).

Here, the plaintiff failed to make such a showing. The plaintiff clearly intended to convey Village Chapels to the defendant purchasers for the total price of $2.8 million. Upon the defendant purchasers' inability to obtain financing under the February Stock Purchase Agreement, and in order to effectuate the sale intended by the plaintiff, the new April Stock Purchase Agreement was drafted. Significantly, the February Stock Purchase Agreement, which the plaintiff executed and was in complete agreement with, included an arbitration clause that was *identical* to the clause contained in the April Stock Purchase Agreement. It cannot be said that the insertion of the identical clause in the April Stock Purchase Agreement was effected to accomplish a fraud. Indeed, the plaintiff apparently had no objection whatsoever to the arbitration clause that was contained in the February Stock Purchase Agreement. It was only after she discovered that there would be certain tax consequences relating to the sale that she raised protestations regarding the April Stock Purchase Agreement, which contained the never-before-objected-to arbitration clause.

To the extent that the plaintiff attempts to challenge the execution of the April Stock Purchase Agreement based on fraud, the plaintiff completely ignores the fact that Godt had actual authority to bind the plaintiff pursuant to the power of attorney validly executed by the plaintiff on December 4, 2010 (*see Best v Best*, 302 AD2d 295 [2003]). Contrary to the dissent's assertion, any admission by Godt resulting from his failure to interpose an answer to the complaint is of no consequence to the issues presented herein. Even if Godt is deemed to have admitted the allegation in the complaint that he did not have authority to enter into the April Stock Purchase Agreement, that admission would not be binding with regard to the remaining defendants.

In addition, the plaintiff appeared at the closing and personally executed documents which clearly referenced the bifurcation of the sale of Village Chapels' stock from that of the real property. The plaintiff is presumed to have read the closing documents. A reading of these documents would have readily advised the plaintiff that the sale was no longer a pure stock sale, and that the April agreements bifurcated the transaction into a stock sale and a real estate asset sale (*see Morby v Di Siena Assoc.*, 291 AD2d 604, 605 [2002]; *see also Pimpinello v Swift & Co.*, 253 NY 159, 162-163 [1930]). A party who signs

a document without any valid excuse for not having read it is "conclusively bound" by its terms (*Gillman v Chase Manhattan Bank*, 73 NY2d 1, 11 [1988]; *see Sorenson v Bridge Capital Corp.*, 52 AD3d 265, 266 [2008]).

Notwithstanding our dissenting colleague's position, an evidentiary hearing is not warranted in this case. The record is sufficiently developed to permit a determination as to the validity of the arbitration clause. The arbitration clause in the April Stock Purchase Agreement is valid and binding on the parties. Any issues regarding the substantive provisions of the April 2011 agreement are to be resolved by the arbitrator. Accordingly, the Supreme Court properly denied that branch of the plaintiff's motion which was to stay arbitration.

The appeal from so much of the order as denied that branch of the plaintiff's motion which was to preliminarily enjoin arbitration pending the determination of the stay application must be dismissed as academic (*see generally Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]). Rivera, J.P., Leventhal and Hinds-Radix, JJ., concur.

Barros, J., dissents, and votes to reverse the order insofar as appealed from, grant that branch of the plaintiff's motion which was to permanently stay arbitration only to the extent that arbitration be temporarily stayed pending an evidentiary hearing, and remit the matter to the Supreme Court, Queens County, for an evidentiary hearing to determine whether a valid arbitration agreement was made on April 4, 2011, and a new determination thereafter on that branch of the plaintiff's motion which was for a permanent stay of arbitration, with the following memorandum: The threshold issue of whether there is a valid agreement to arbitrate is for the courts (*see Matter of Primex Intl. Corp. v Wal-Mart Stores*, 89 NY2d 594, 598 [1997]; *Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 6-8 [1980]; *Matter of Jalas v Halperin*, 85 AD3d 1178, 1181 [2011]). "The party seeking a stay of arbitration has the burden of showing the existence of sufficient evidentiary facts to establish a preliminary issue which would justify the stay" (*Matter of Hertz Corp. v Holmes*, 106 AD3d 1001, 1002 [2013] [internal quotation marks omitted]).

The Supreme Court denied the plaintiff's motion to stay arbitration based, in part, upon an arbitration clause contained in the February Stock Purchase Agreement between the plaintiff and the defendants John DiMario, George Luhring, and Joseph Nunziata (hereinafter collectively the defendant purchasers). However, the respondents' demand for arbitration indicates that it was based upon an arbitration clause

contained in the April Stock Purchase Agreement, which, by its terms, expressly superseded the February Stock Purchase Agreement in its entirety (*see Matter of Minkin [Halperin]*, 279 App Div 226, 228 [1951], *affd* 304 NY 617 [1952]). Accordingly, I agree with the majority that the Supreme Court should have only considered whether there was a valid agreement to arbitrate in the April Stock Purchase Agreement.

Since the plaintiff's allegations and evidentiary submissions raise triable issues of fact as to whether there was fraud in the execution of the April Stock Purchase Agreement, as well as whether fraud permeated the entire transaction, I disagree with the majority that the determination of whether there was such fraud is for the arbitrators, and not the courts, to decide.

In support of her motion to stay arbitration, the plaintiff submitted, among other things, her own affidavit, in which she averred that she was the owner of Village Chapels, Inc., a funeral home business, and that in September 2010, she began negotiating to sell the business to her "longstanding employees and friends," DiMario and Luhring. During those negotiations, she "specifically told" DiMario and Luhring that, upon the advice of her attorney and accountant, she would only agree to a stock sale rather than an asset sale, and DiMario and Luhring expressed their understanding of that requirement.

She averred that, because she was planning to leave the country to do missionary work, she executed a power of attorney dated December 4, 2010, authorizing her attorney, the defendant Kenneth H. Godt, to execute a stock sale agreement. However, the plaintiff did not leave the country and was able to personally execute the February Stock Purchase Agreement and the February Purchase and Sale Agreement (hereinafter together the February stock sale agreement).

Thereafter, the defendant purchasers were unable to get financing to close on the February stock sale agreement. The plaintiff averred that, unbeknownst to her, Godt negotiated a new contract with the defendant purchasers that structured the transaction as an asset sale, and that using the power of attorney dated December 4, 2010, signed the April Stock Purchase Agreement and the April Purchase and Sale Agreement, dated April 4, 2011 (hereinafter together the April asset sale agreement), on her behalf, without her knowledge.

Structuring the deal as an asset sale caused the plaintiff to have an additional tax liability of $830,000. Unbeknownst to the plaintiff, Godt had been suspended from the practice of law by decision and order on motion of this Court dated December 7, 2010. As a result of the transaction, the plaintiff alleges that

Godt converted the sum of $239,500 from the proceeds of the sale.

In *Matter of Weinrott (Carp)* (32 NY2d 190 [1973]), the Court of Appeals held that "[a]s a general rule . . . under a broad arbitration provision the claim of fraud in the inducement should be determined by arbitrators" (*id.* at 199; *see Anderson St. Realty Corp. v New Rochelle Revitalization, LLC*, 78 AD3d 972, 974 [2010]). "[A]n arbitration clause is generally separable from substantive provisions of a contract, so that an agreement to arbitrate is valid even if the substantive provisions of the contract are induced by fraud" (*Anderson St. Realty Corp. v New Rochelle Revitalization, LLC*, 78 AD3d at 974, citing *Matter of Weinrott [Carp]*, 32 NY2d at 198). This holding departed from prior case law (*see Matter of Wrap-Vertiser Corp. [Plotnick]*, 3 NY2d 17 [1957]), which held that "fraud in the inducement, coupled with a claim for rescission, is always a matter for judicial determination prior to arbitration" (*see Matter of Weinrott [Carp]*, 32 NY2d at 194).

Since the plaintiff alleges fraud in the execution, not fraud in the inducement, the holding of *Matter of Weinrott (Carp)* (32 NY2d 190 [1973]) is not applicable here.

Fraud in the execution "generally connotes an attack upon the very existence of a contract from its beginning, in effect alleging that there was no legal contract and that the instrument never had a valid inception. The attack is upon certain facts which occurred at the time of the alleged execution of the agreement, upon which facts the validity of the agreement depends" (*Mix v Neff*, 99 AD2d 180, 182 [1984]; *see Gilbert v Rothschild*, 280 NY 66, 71 [1939]).

"To be distinguished is the claim where an opponent of a contract asserts the defense of fraud in the inducement, which, if proven, renders the contract voidable. This form of fraud is usually based on facts occurring prior or subsequent to the execution of a contract which tend to demonstrate that an agreement, valid on its face and properly executed, is to be limited or avoided" (*Mix v Neff*, 99 AD2d at 182-183 [citations omitted]; *see Mangini v McClurg*, 24 NY2d 556, 563 [1969]). "To sustain a claim for fraudulent inducement, there must be a knowing misrepresentation of material fact, which is intended to deceive another party and to induce them to act upon it, causing injury" (*Sokolow, Dunaud, Mercadier & Carreras v Lacher*, 299 AD2d 64, 70 [2002]).

Here, the plaintiff does not claim that a misrepresentation by the purchasers induced her into executing the April asset sale agreement. Rather, she alleges that she never executed

the contract at all, and that Godt, a suspended attorney acting against her express instructions for his own personal benefit, had no authority to bind her to the April asset sale agreement.

Despite the plaintiff's averments to the contrary, and Godt's suspension from the practice of law, the majority determines, without a hearing having been held, that Godt had actual authority, by virtue of a power of attorney, to bind the plaintiff to the April asset sale agreement. However, Godt did not interpose an answer to the complaint and, therefore, is "deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them" (*see Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 71 [2003]; *Rokina Opt. Co. v Camera King*, 63 NY2d 728, 730 [1984]). In this regard, the complaint alleged, among other things, that Godt did not have authority to enter into the April asset sale agreement.

The plaintiff also contends that the purchaser's reliance on Godt's apparent authority to execute the April asset sale agreement on her behalf using a power of attorney was unreasonable (*see Hallock v State of New York*, 64 NY2d 224, 231 [1984] ["a third party with whom the agent deals may rely on an appearance of authority only to the extent that such reliance is reasonable"]; *Collision Plan Unlimited v Bankers Trust Co.*, 63 NY2d 827, 831 [1984] [a party who invokes the doctrine of apparent authority assumes a duty of reasonable inquiry]). In this regard, the plaintiff averred that the purchasers knew, through their prior conversations, that the plaintiff would not agree to an asset sale. Also, the plaintiff claims that a duty of reasonable inquiry arose in light of the extraordinary material change between the February stock sale agreement and the April asset sale agreement, which increased the tax liability from about $500,000 to $1.3 million dollars, and the fact that the subject power of attorney, dated December 4, 2010, was not used to execute the February stock sale agreement.

The plaintiff also submitted the affidavit of her accountant, in which he stated, in effect, that at all relevant times, he communicated with the plaintiff and Godt that the transaction must be structured as a stock sale because the projected tax liability for an asset sale would be more than twice than that of a stock sale.

The plaintiff's affidavit and other submissions, which are contradicted by the respondents' submissions, raise threshold issues as to whether there was fraud in the execution of the April asset sale agreement, which includes the arbitration clause. While the majority correctly determines that the

plaintiff's allegations as against Godt, even if true, would not constitute the crime of forgery (*see* Penal Law § 170.00; *People v Ippolito*, 20 NY3d 615, 624 [2013]), they sufficiently allege fraud in the execution.

Moreover, the evidence also demonstrates the existence of triable issues of fact as to whether the April asset sale agreement was "permeated with fraud, such that the arbitration clause would fall with the rest of the agreement" (*see Matter of Kennelly v Mobius Realty Holdings LLC*, 33 AD3d 380, 382-383 [2006]; *see also Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984]; *Matter of Weinrott [Carp]*, 32 NY2d at 197).

In reaching its conclusion, the majority relies upon the fact that the plaintiff appeared at the closing in August 2011, and personally executed documents, including an indemnity agreement, referencing the April asset sale agreement. However, the plaintiff averred that, in June 2011, after the contract execution but before the closing, DiMario assured her that the deal remained structured as a stock sale. At the closing, none of the documents stated that the plaintiff would have to pay $1.3 million in taxes as a result of the restructure as an asset sale. Indeed, the escrow agreement provided that Godt retain only $500,000 in escrow to pay taxes, which is consistent with the plaintiff's understanding that the transaction was still structured as a stock sale. In executing the closing documents, the plaintiff may have been entitled to rely on the representation of Godt, her attorney for many years, without conducting an independent inquiry (*see Frame v Maynard*, 83 AD3d 599, 602 [2011]). "[R]atification is a question of fact unless the evidence is undisputed and different inferences cannot reasonably be drawn from it, and [a] necessary element of ratification is intent" (*see Robinson v Day*, 103 AD3d 584, 586 [2013] [internal quotation marks and citations omitted]). Here, again, the circumstances of the April asset sale agreement demonstrate issues of fact as to whether the plaintiff ratified the April asset sale agreement at the closing in August 2011.

Where a triable issue of fact is raised with respect to the validity of an arbitration clause, "the Supreme Court, not the arbitrator, must determine it in a framed-issue hearing, and the appropriate procedure under such circumstances is to temporarily stay arbitration pending a determination of the issue" (*Matter of Hertz Corp. v Holmes*, 106 AD3d 1001, 1003 [2013]; *see Matter of Kennelly v Mobius Realty Holdings LLC*, 33 AD3d 380, 382-383 [2006]).

Accordingly, I dissent, and vote to grant that branch of the plaintiff's motion which was to stay arbitration only to the

extent that the matter be remitted to the Supreme Court, Nassau County, for an evidentiary hearing (*see* CPLR 7503 [a]), and a new determination on that branch of the plaintiff's motion seeking a permanent stay of arbitration.