**482 Tompkins Realty LLC v 482 Tompkins Capital LLC**

2024 NY Slip Op 34520(U)

December 18, 2024

Supreme Court, Kings County

Docket Number: Index No. 1322/18

Judge: Larry D. Martin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part Comm-10, of the
Supreme Court of the State of New York,
held in and for the County of Kings, at the
Courthouse, at 360 Adams Street, Brooklyn,
New York, on the 18th day of December,
2024.

PRESENT:

HON. LARRY D. MARTIN,

                                        Justice.
-------------------------------------------------------------------------X
482 TOMPKINS REALTY LLC, THERESA EMELI,
and JOAN KOMOLAFE,

                                        Plaintiffs,

                -against-                                        Index No. 1322/18

482 TOMPKINS CAPITAL LLC, 482 TOMPKINS
SME LLC, SME CAPITAL VENTURES, SME
CAPITAL MANAGEMENT LLC, ERAN
SILVERBERG, DAVID KAMINSKY, and USC 482
TOMPKINS LLC,

                                        Defendants.
-------------------------------------------------------------------------X

The following e-filed papers read herein:                NYSCEF Nos.:

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____    288-289, 296-297, 340-342, 358-359_____
Opposing Affidavits (Affirmations)_____   341-342, 359, 360, 362-363, 388, 391, 397
Affidavits/ Affirmations in Reply _____  388, 391, 397_____
Other Papers: Affidavit/Affirmation in Support_ 324_____

Upon the foregoing papers, defendant David Kaminsky (Kaminsky) moves

(Motion Sequence [MS] # 11), pursuant to CPLR 3212 and/or 3211 (a) (7) and 3016 (b),

dismissing the claims of plaintiffs 482 Tompkins Realty LLC (482 Realty), Theresa

Emeli (Emeli) and Joan Komolafe (Komolafe) and all cross claims as against Kaminsky.

Defendant USC 482 Tompkins LLC (USC) moves (MS # 12) for an order, pursuant to

CPLR 3212, granting summary judgment dismissing the complaint as against USC.

1

[* 1]

Plaintiffs cross-move (MS # 13) for an order, pursuant to CPLR 3212, granting plaintiffs summary judgment and denying the summary judgment motion of Kaminsky. Plaintiffs cross-move (MS # 14) for an order, pursuant to CPLR 3212, granting summary judgment and denying the summary judgment motion of USC.

Plaintiffs commenced this action to recover damages and equitable relief stemming from a transaction where the subject property at 482 Tompkins Avenue in Brooklyn, owned by 482 Realty, was conveyed to defendant 482 Tompkins SME LLC (SME) as part of an alleged fraudulent foreclosure rescue scheme. 482 Realty, a limited liability company held by members Emeli, as to a 90% interest, and Komolafe, as to a 10% interest, assumed title to the subject property by deed dated November 15, 2007. In 2015, a foreclosure action was commenced on the mortgage encumbering the property. Plaintiffs wished to retain ownership of the property, but were unable to obtain the refinancing necessary to pay off the delinquent mortgage. Consequently, plaintiffs came into contact with defendant Eran Silverberg (Silverberg), member of defendant SME Capital Management LLC (SME Capital), who allegedly promised to help plaintiffs obtain refinancing that would save the subject property from foreclosure. According to the complaint, Silverberg represented that title to the property would have to be transferred to a newly formed limited liability company (LLC) due to the poor credit standing of 482 Realty, but that plaintiffs would still retain the majority interest in the new LLC, with Silverberg having a small interest so as to enable him to negotiate with the foreclosing mortgagee. Plaintiffs allege being told that after three months' worth of payments were made on a hard money loan given by Silverberg's company, they would

2

[* 2]

be able to obtain an affordable conventional refinancing loan from a banking institution. Plaintiffs allege that Kaminsky's firm was brought in by Silverberg to act as plaintiffs' purported counsel in the transaction. 482 Realty, by Komolafe, entered into a retainer agreement with Kaminsky's firm, dated April 18, 2017, which provided, in part, the following:

> "We agree to assist and represent you in settling the mortgage default and resolve a payoff of the loan amount, which will result in discontinuance of the foreclosure, but not to appear in the foreclosure case and litigate the foreclosure defense.
>
> ***
>
> "Client waives attorney client confidentiality with regard to the proposed new lender and the mortgage broker, and client wants David A. Kaminsky & Associates, P.C. to communicate with them jointly in email threats, and that client waives any conflict of interest in David A. Kaminsky & Associates, P.C. representing her, and client understands that David A. Kaminsky & Associates, P.C. have in the past and continue to represent Evan Silverberg in separate unrelated matters, and he is a principal and/or participant in the new loan being arranged to payoff Client's existing lender."

On June 8, 2017, plaintiffs entered into a "joint venture" with an "option agreement" (as alleged in the complaint) with the newly formed company, SME, whereby the existing mortgage in foreclosure was satisfied. The transaction included a Contract of Sale between 482 Realty and SME, a Bargain and Sale Deed conveying the property from 482 Realty to SME, an Operating Agreement for SME establishing a 90% interest in defendant 482 Tompkins Capital LLC (482 Capital) and a 10% interest in 482 Realty, and an Option Agreement giving 482 Realty the option of purchasing all membership interests held by 482 Capital in SME for an exercise price of $2,150,000.00. The option

3

would be available to 482 Realty so long as monthly payments of $25,083.33 were remitted to 482 Capital. The option was available to 482 Realty from the date of the Option Agreement (June 8, 2017) through June 8, 2018 or the date of an option payment default as defined in the Option Agreement. The aforementioned documents were signed by Komolafe on behalf of 482 Realty as managing member. Also executed at the closing was a stipulation of discontinuance of the foreclosure action with prejudice by the foreclosing plaintiff's attorney and 482 Realty's foreclosure action counsel. The deed conveying the property from 482 Realty to SME, dated June 8, 2017, was recorded on June 30, 2017. A satisfaction of the mortgage encumbering the property, dated June 8, 2017, was recorded on June 30, 2017.

Plaintiffs allege that following the closing, Komolafe was made managing agent to operate and maintain the building and to collect rents, which would be deposited into a joint account with Silverberg to be used toward the monthly payments of $25,083.33, with plaintiffs making up any balance from their own income. Plaintiffs allege that disputes thereafter arose over payment of taxes and other financial issues, and that they were not given access to SME's bank account and could not substantiate any balance which may be owed on top of the rental income collected. Plaintiffs maintain that when they attempted in January 2018 to make the monthly payment plus additional monies towards the taxes, the payments were rejected and plaintiffs were held in default. After issuing a notice of default, dated January 2018, 482 Capital terminated 482 Realty's option to purchase its membership interest in SME.

4

SME thereafter entered into a contract of sale with USC, dated March 2, 2018, to sell the subject property for $3,150,000.00. The property was conveyed from SME to USC by deed dated March 28, 2018.

In their complaint, filed on June 6, 2018, plaintiffs set forth causes of action for a declaration of rights under Real Property Actions and Proceedings Law [RPAPL] article 15 (first), equitable mortgage under Real Property Law [RPL] § 320 (second), fraud in the factum (third), fraudulent inducement (fourth), constructive trust (fifth), civil conspiracy to commit fraud (sixth), specific performance (seventh), breach of contract/anticipatory breach of contract (eighth) and legal malpractice (ninth). Following the commencement of this action, motions were brought by USC, Silverberg and Kaminsky for dismissal of the complaint under CPLR 3211. By order dated February 20, 2019 (Hon. Sylvia Ash, J.), the court denied USC's motion without prejudice, granted Silverberg's motion "as to his personal capacity," denied Kaminsky's motion "without prejudice as to fraud and conspiracy" and granted Kaminsky's motion as to "all other causes of action." Discovery proceeded in this matter, including the examinations before trial (EBTs) of Kaminsky, Silverberg, Emeli and Komolafe. A Note of Issue indicating that discovery was complete was filed on April 9, 2024. Kaminsky brought the instant motion for summary judgment on June 7, 2024.

In order to obtain summary judgment, a movant must establish its defense or cause of action sufficiently to warrant a court's directing judgment in its favor as a matter of law (*Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 967 [1988]). Once the moving party has made a prima facie showing of entitlement to summary judgment, the

5

[* 5]

burden shifts to the opponent to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which requires a trial (*id.*; *Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" for this purpose (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

As per the February 20, 2019 order, the extant causes of action against Kaminsky are the third and fourth causes of action for fraud in the factum and fraudulent inducement, and the sixth cause of action for civil conspiracy to commit fraud. This order has not been appealed, and is therefore law of the case (*see Melikov v 66 Overlook Terrace Corp.*, 231 AD3d 675, 675 [1st Dept 2024]; *Swiezy v Investigative Post, Inc.*, 228 AD3d 1266, 1268 [4th Dept 2024]).

The elements of fraud are (1) a misrepresentation or a material omission of fact which was false, (2) knowledge of its falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages (*see Swartz v Swartz*, 145 AD3d 818, 823 [2d Dept 2016]; *Ginsburg Dev. Cos., LLC v Carbone*, 134 AD3d 890, 892 [2d Dept 2015]). New York does not recognize civil conspiracy to commit a tort as an independent cause of action (*see Alexander & Alexander of N.Y. v Fritzen*, 68 NY2d 968, 969 [1986]; *Brackett v Griswold*, 112 NY 454, 466-467 [1889]; *Blanco v Polanco*, 116 AD3d 892, 895-896 [2d Dept 2014]; *Dickinson v Igoni*, 76 AD3d 943, 945 [2d Dept 2010]). However, a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort, and establish that those actions were part of a common scheme (*see Alexander & Alexander of N.Y.*, 68

6

[* 6]

NY2d at 969; *Blanco*, 116 AD3d at 896). Under New York law, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement" (*Perez v Lopez*, 97 AD3d 558, 560 [2d Dept 2012]; *see 1766-68 Assoc., LP v City of New York*, 91 AD3d 519, 520 [1st Dept 2012]; *Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472, 474 [1st Dept 2010]). A cause of action for civil conspiracy to commit a tort "stands or falls with the underlying tort" (*Philip S. Schwartzman, Inc. v Pliskin, Rubano, Baum & Vitulli*, 215 AD3d 699, 703 [2d Dept 2023] [citation omitted]).

In their causes of action sounding in fraud, plaintiffs allege "defendants" (collectively, without distinguishing same) misrepresented the nature of the documents signed at the June 8, 2017, and that Komolafe believed she was signing loan documents, not documents conveying title to the property. Plaintiffs allege that they were "led to believe that any document purporting to be a Deed was merely to place title in the name of a new[] [e]ntity which would be wholly owned by the individual Defendants [sic] and that the remainder of the documents created a Mortgage which Plaintiffs could pay off to continue their ownership" (Complaint, NYSCEF Doc No 1, at ¶ 102).

In support of his motion for summary judgment, Kaminsky submits, among other proof, a copy of the retainer agreement stating that his representation was limited to settling the mortgage default and resolving a payoff of the loan amount, copies of the June 8, 2017 closing documents executed by Komolafe on behalf of 482 Realty, including the Contract of Sale, deed, Operating Agreement of SME setting forth, inter

7

[* 7]

alia, the 10% interest of 482 Realty and 90% interest of 482 Capital, the Option Agreement setting forth the monthly payment requirements of 482 Realty with the Option to purchase all interest of SME, and Kaminsky's own EBT testimony.

Kaminsky testified that he had conversations with Silverberg and Komolafe contemporaneously, but never conversed with Silverberg without Komolafe being included (Kaminsky EBT, NYSCEF Doc No 294, at 15); that he discussed the term sheet for the joint venture transaction between 482 Realty and 482 Capital with Komolafe (*id.* at 18); and that he reviewed the Operating Agreement and Option Agreement with Komolafe, explained the contents of the agreements to Komolafe, and that Komolafe understood the documents (*id.* at 19). Kaminsky also testified that he was not compensated by anyone other than Komolafe for his representation, that he did not have any reason to believe there was anything improper about the transaction, and that there were no issues presented in his representation of Komolafe that led him to suspect fraud on the part of 482 Capital (*id.* at 130-131).

Plaintiff alleges fraud in the factum, also known as fraud in the execution, i.e., which is where a party is induced to sign something entirely different than what the party thought he or she was signing (*see First Natl. Bank of Odessa v Fazzari*, 10 NY2d 394, 397 [1961]; *Ackerman v Ackerman*, 120 AD3d 1279, 1280 [2d Dept 2014]; *Cash v Titan Fin. Servs., Inc.*, 58 AD3d 785, 788 [2d Dept 2009]). However, "[a] party who signs a document without any valid excuse for not having read it is 'conclusively bound' by its terms" (*Ferrarella v Godt*, 131 AD3d 563, 567-568 [2d Dept 2015], quoting *Gillman v Chase Manhattan Bank*, 73 NY2d 1, 11 [1988]; *see Pimpinello v Swift & Co.*, 253 NY

8

159, 162-163 [1930]; *U.S. Legal Support, Inc. v Eldad Prime, LLC*, 125 AD3d 486, 487 [1st Dept 2015]), and a cause of action for fraud in the factum generally only arises if the signor is illiterate, blind, or not a speaker of the language in which the document is written (*see First Natl. Bank of Odessa*, 10 NY2d at 397; *Ackerman*, 120 AD3d at 1280-1281; *Cash*, 58 AD3d at 788). Further, a necessary element of a cause of action sounding in fraudulent misrepresentation is justifiable reliance by the plaintiff on the misrepresentation (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]; *Shao v 39 Coll. Point Corp.*, 309 AD2d 850, 851 [2d Dept 2003]), and there can be no justifiable reliance on an oral representation where such is in conflict with the subsequent written terms of the parties' agreement (*see Daily News v Rockwell Intl. Corp.*, 256 AD2d 13, 14 [1st Dept 1998]; *Lewin Chevrolet-Geo-Oldsmobile v Bender*, 225 AD2d 916, 916 [3d Dept 1996])..

The proof submitted demonstrates that Kaminsky made no misrepresentations regarding the nature and effect of Komolafe's execution of the documents at the June 8, 2017 closing, that no questions or reservations were made by Komolafe regarding the documents she signed, or that Kaminsky was privy to any alleged representations made by Silverberg regarding the transaction, or any extrinsic promise Silverberg may have made regarding the joint venture. Accordingly, Kaminsky established prima facie entitlement to summary judgment dismissing plaintiffs' claims of fraud in the factum, fraudulent inducement, and conspiracy to commit fraud.

In opposition, plaintiffs fail to raise an issue of fact as to Kaminsky's lack of involvement in any alleged fraud. In her affidavit in opposition (NYSCEF Doc No 342),

9

Komolafe argues that Kaminsky's past representation of Silverberg created a conflict of interest, that Kaminsky did not fully explain the terms of the documents signed at the closing and that Kaminsky should have done more to protect her interests. However, Komolafe acknowledged Kaminsky's prior representation of Silverberg and waived any conflict of interest in the retainer agreement she signed, and Komolafe did not allege that Kaminsky misrepresented the import or ramification of the closing documents, concealed their content or prevented Komolafe from reading them. Komolafe's complaints regarding the quality of Kaminsky's representation do not demonstrate, beyond speculation, that Kaminsky was knowingly participating in a fraudulent scheme with respect to the June 8, 2017 transaction. Further, Komolafe testified that she was neither forced to sign the closing documents (Komolafe EBT, NYSCEF Doc No 301, at 118), nor told not to read them (*id.* at 127). Under the circumstances, Komolafe is conclusively presumed to have agreed to the terms of those documents (*see Gillman v Chase Manhattan Bank*, 73 NY2d 1, 11 [1988]; *Pimpinello*, 253 NY at 162-163; *Ferrarella v Godt*, 131 AD3d 563, 567-568 [2d Dept 2015]; *U.S. Legal Support, Inc.*, 125 AD3d at 487; *Ackerman*, 120 AD3d at 1280; *Matter of Aoki v Aoki*, 117 AD3d 499, 503 [1st Dept 2014]). Since the closing documents included a Bargain and Sale Deed along with an Operating Agreement setting forth the parties' interests in SME and an Option Agreement setting forth 482 Realty's obligations regarding the purchase of 482 Capital's shares, plaintiffs cannot justifiably rely on any conflicting representations by Silverberg and/or Kaminsky regarding the nature of the transaction and/or plaintiffs' allegedly promised interests in SME or in the subject property.

10

[* 10]

As a result, Kaminsky's motion for summary judgment (MS #11) is granted. The complaint is dismissed as against Kaminsky.

USC moves for summary judgment contending, inter alia, that it is a bona fide purchaser for value. Pursuant to Real Property Law § 266, a bona fide purchaser for value is protected in its title unless it had previous notice of an alleged fraud (*see Irwin v Regal 22 Corp.*, 175 AD3d 671, 671-672 [2d Dept 2019]). To establish that it is a bona fide purchaser for value, a party has "the burden of proving that [it] purchased the property for valuable consideration and that [it] did not purchase with knowledge of facts that would lead a reasonably prudent purchaser to make inquiry" (*Berger v Polizzotto*, 148 AD2d 651, 651-652 [2d Dept 1989] [citation and internal quotation marks omitted]). "'[W]here a purchaser has knowledge of any fact, sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed either to have made the inquiry, and ascertained the extent of such prior right, or to have been guilty of a degree of negligence equally fatal to his claim, to be considered as a bona fide purchaser'" (*Maiorano v Garson*, 65 AD3d 1300, 1303 [2d Dept 2009], quoting *Williamson v Brown*, 15 NY 354, 362 [1857]).

In support of its motion for summary judgment, USC submits the affidavit of Seth Weissman, the managing member of USC's manager. Weissman states that in connection with its purchase of the property, USC engaged a title company to conduct a title search, obtain a title commitment, and issue a title insurance policy for the property. The title company requested and obtained the following documentation to confirm that SME had sufficient authority to transfer the property: the Articles of Incorporation of SME; Title

11

Affidavit from Silverberg attesting to his authority to bind the SME to the transaction; and a policy of title insurance with no exceptions related to the title of SME or its authorization to sell the property. Weissman states that at the closing, the title company issued a policy of title insurance with no exceptions related to the title of SME or its authorization to sell the property.

Weissman avers that prior to February 2018, when USC negotiated its contract of sale with SME, neither he nor USC had entered into any business relationships with SME, Silverberg, 482 Capital, SME Capital Ventures, SME Capital Management LLC, or any of the plaintiffs in this action, and that at no time during the closing, or at any time prior, did he or USC have any knowledge of any alleged wrongdoing on the part of SME, Silverberg, 482 Capital, SME Capital Ventures, or SME Capital Management LLC in connection with SME's acquisition of the property. Weissman further avers that at no time during the closing of title, or at any time prior, did USC's broker, Silverberg or any other person on behalf of SME, ever indicate that plaintiffs had any cognizable or even arguable interest in the subject property.

The court finds that USC met its prima facie burden of establishing that it was a bona fide encumbrancer for value "by showing that a title search revealed that [SME] was the record owner of the subject property at the time of the closing . . . , and that there were no recorded contracts affecting title" (*Maiorano*, 65 AD3d at 1302; *see Fleming-Jackson v Fleming*, 41 AD3d 175 [1st Dept 2007]; *Emerson Hills Realty v Mirabella*, 220 AD2d 717 [2d Dept 1995]). In opposition, plaintiffs do not submit proof sufficient to raise an issue of fact. In her opposing affidavit, (NYSCEF Doc No 359), Komolafe states

12

that units in the building were occupied by tenants, including a basement office occupied by Komolafe, but Weissman never asked her any questions regarding the building or its tenants during his walk-through and inspection. However, that mere fact that the residential and commercial units of the building were occupied does not, by itself, give rise to inquiry notice since such occupancy would be consistent with leaseholds, not some right or title palpably "in conflict with" the fee title to the property which USC was looking to purchase.

Further, USC established through its submissions that it did not make any representations or promises to plaintiffs at or regarding the June 8, 2017 closing, nor had any involvement with said transaction. Plaintiffs do not submit proof, beyond mere speculation, of any involvement of USC in a conspiracy with SME or Silverberg.

As a result, USC's motion for summary judgment (MS # 12) is granted. The complaint is dismissed as to USC.

In light of the foregoing dispositions, plaintiffs' motions for summary judgment (MS ## 13 & 14) are denied.

The foregoing constitutes the decision and order of the court.

E N T E R,

J. S. C.

HON. LARRY D. MARTIN
Justice of the Supreme Court

13